CHARLES P. ADAMS

*vs.*

THE HASTINGS & DAKOTA RAILROAD CO.

The defendant's charter authorized it to take private property for its purposes upon making full and proper compensation therefor to the owners thereof, to be ascertained by proceeding in the manner therein specified. [*Laws of* 1857, *ch*. 39, *sec*. 9.]

The plaintiff was the owner and in possession of a lot in Hastings, on the east side of and fronting on B street, and also of said street to its centre adjoining said lot, subject only to the easement of the public therein for a street. Defendant, by authority of the city council, but without his consent, and without acquiring the right so to do by proceedings as above mentioned under its charter, constructed its railroad track on and along the centre of said street in front of said lot, and has ever since operated its railroad thereon without his consent and to his damage. *Held*, that defendant was a trespasser in respect of plaintiff.

In an action in the nature of an action of trespass *quare clausum* brought to recover damages for such trespasses, the plaintiff is entitled to recover for the injury sustained by him by reason of the said illegal acts of defendant on his land in constructing said track, and running trains thereon, down to the commencement of the action.

If the mere construction of the road-bed and track, without reference to any wrongful use which defendant might make of it, necessarily lessened the value of plaintiff's property, such depreciation, since it accrued immediately upon the construction of said road-bed and track, was permanent in its nature, and a direct and immediate result of the trespass, could be recovered for in such action.

So, if such erection had necessarily caused the surface water to stand upon plaintiff's land, and run into his cellar and well, he could recover therefor in this action, though the injury might not accrue for some time after the completion of the road-bed and track.

Adams v. The Hastings & Dakota Railroad Co.

Defendant, by so wrongfully constructing said railroad, and running its engines and cars thereon, had acquired no right so to do as against the plaintiff, and had not imposed on said street the additional servitude of its road. Plaintiff, therefore, cannot recover in this action for any depreciation in the value of his property which would result from subjecting said street to such an additional servitude.

The plaintiff obtained a verdict against the defendant in the district court for Dakota county. The defendant moved for a new trial, which was granted, and from the order granting the same the plaintiff appeals to this court. The case is sufficiently stated in the opinion.

HUDDLESTON & BABCOCK, for Appellant.

SEAGRAVE SMITH, for Respondent.

*By the Court.*—RIPLEY, CH. J.—The plaintiff's case is, that in 1868, he was the owner and in possession of a lot in Hastings, on the east side of and fronting on Bailly street, [a street ninety-nine feet wide] as well as of said street to its centre adjoining said lot, subject only to the easement of the public therein for a street, and that the defendant, without his consent, and without acquiring the right so to do by proceedings therefor pursuant to its charter, [*Laws of* 1857, *ch*. 39, *s*. 9,] appropriated part of said street to its use for the purpose of laying a railroad track upon it, constructed said track on and along the centre of said street in front of plaintiff's said premises, about sixteen feet in width, extending about ten feet east from the centre of the street, and on a grade from ten to eighteen inches above the ordinary level of the street, and has ever since operated its railroad thereon, without his consent, and against his will, to his damage; thus presenting an analogous case in respect of the facts, to *Gray vs. First Div. St. P.*

and P. R. R., 13 *Minn.* 315, and *Harrington et al. vs. St. Paul and Sioux City R.*, 17 *Minn.* 215. According to those decisions, and taking the plaintiff's case as aforesaid for granted, the defendant, supposing it to have been authorized [as it contends that it was] by the city council of Hastings thus to construct and operate its road, was, nevertheless, a trespasser in respect of the plaintiff, and an action lay for him to recover the damages he had sustained by reason of such illegal acts of the defendant.

In the present action the jury returned a verdict for the plaintiff, and assessed his damages in the sum of $1,000. The defendant moved for a new trial upon the grounds of 1st, excessive damages ; 2d, that the verdict is not justified by the evidence and is contrary to law ; 3d, errors in law occurring at the trial and excepted to by the defendant. The plaintiff appeals from the order of the district court granting the motion.

Upon what ground such new trial was granted does not appear. We cannot reverse the order unless it appears that there is no ground upon which it can be sustained. *Marsh vs. Webber*, 13 *Minn.* 109.

This, we think, does not appear. We think it quite clear, upon the complaint, evidence and charge, that the jury must have been under a mistaken impression as to the proper measure of damages; that in arriving at their verdict they took into consideration that which would have been proper for a jury empanelled in a proceeding by defendant, under its charter, to acquire the right of way, but not for this jury to consider, viz.: the compensation to be made to plaintiff " for the taking or injuriously affecting of such lands or real estate." *Sec. 9 of defendant's charter.*

The defendant, as already stated, was a trespasser in respect of plaintiff. The plaintiff should, therefore, have recovered

Adams v. The Hastings & Dakota Railroad Co.

damage for the injury he had sustained by the said illegal acts of defendant on his land in constructing said track and running trains thereon, down to the commencement of the suit. But if defendant should continue thereafter to use said track against plaintiff's will, each day of such use would give him a fresh cause of action for each such unlawful entry upon and passage over plaintiff's land with its engines and cars.

The difference, therefore, is obvious between the measure of damages in the present case and one in which the defendant should seek to become invested with all the right and title of the land and entitled to full, free and perfect use and occupation of the same for its purposes. *Sec. 9 aforesaid.*

If, indeed, the illegal occupation by defendant of plaintiff's land were of such a character as to amount to an ouster, he might maintain ejectment and recover the possession with damages for withholding the same. But this is not such an action. On the contrary, the plaintiff alleges, that at the time of the commencement of the suit he was in possession of the *locus in quo,* " subject only to the public easement of said street."

Nor is this an action under the statute to abate the road as a nuisance. (*Gen. St. ch.* 75, *sec.* 25.) In this action the plaintiff, alleging ownership and possession in himself of the street in front of his lot to its centre, subject to said easement, complained that defendant in 1868, without his consent entered thereon, and without paying or securing to him any compensation therefor or causing his damages to be assessed, wrongfully, without his consent, appropriated a portion thereof to its use for the purpose of laying a track, and dug up the street and constructed the embankment already described on and along the street to the length of fifteen hundred feet, laid down cross ties and rails, and completed, and has ever since maintained and operated a railroad thereon, and *subjected said*

*street and plaintiff's land to the additional burden and servitude of* *said railroad embankments, &c., contrary to the dedication thereof* *to the public;* that by reason of such wrongful acts of the defendant in building said road on and in said land and street, digging up the same and building embankments thereon, it caused the surface water in rainy weather to run into the plaintiff's cellar and well, and on other parts of his land, and deprived plaintiff of the free use of said lands and street as a highway, subjecting him to the dangers and annoyance of the railroad and cars and engines; that defendant also at times obstructed said lands and street with freight, baggage, wood, &c.; that said wrongful acts have caused a great depreciation in the value of plaintiff's lands. (It should be noted that the allegation which we have italicised is not found in the complaint in Gray vs. First Div. St. P. & P. R., above referred to.)

Inasmuch as the plaintiff, as already remarked, alleges himself to have been in possession when he brought this action, it can only be considered as an action brought to recover damages for trespasses committed by defendant on his land, an action in the nature of an action of trespass *quare clausum,* stating a continuing trespass from the commencement of the construction of the defendant's road in building it on his land, and thereafter running its trains thereon at its pleasure in the operation of its railroad, and stating also, certain other incidental trespasses, so to speak, in placing and leaving freight, &c., on his land.

As there is no presumption of law that such illegal running of trains and other trespasses will be continued in the future, —that the unlawful act of to-day will be repeated on the morrow, it is, of course, obvious, that while the jury in the present case could assess past damages, they could not assess the permanent damages to accrue from an assumed continued

use thereafter of the land by the defendant in the same way. *Ford vs. Chicago &c. R. R.,* 14 *Wis.* 609.

The defendant may now, if it sees fit, proceed under its charter to acquire in plaintiff's land, by paying full and proper compensation therefor, the rights above stated. Such compensation, too, must include not only the value of the land taken, but also such incidental loss and damage as may be reasonably expected to result from the construction and use of the road in a legal and proper manner, necessarily including, therefore, permanent damages to accrue from a continued use of the road. Till it see fit to do so, if it continue meanwhile without his consent to run its trains over plaintiff's land, it is a trespasser, liable to him for such damages as he may sustain by such repeated illegal acts done on his land. 1 *Redf. on Railways,* ch. 11, sec. 12 ; *Harrington et al. vs. St. P. & S. C. R. R., supra.*

The plaintiff contends that the injury to him by reason of said illegal acts is in its nature permanent, and that he is entitled to the consequent damages.

If the construction of said road-bed and track on plaintiff's land necessarily lessened the value of plaintiff's property, that is to say, if it would be worth less, because of the mere existence thereon of said road-bed and track, without reference to any wrongful use which defendant might or might not make of them, such depreciation accrued immediately upon the construction thereof, and was in its nature permanent, and being a direct and immediate result of the trespass could be recovered for in this action ; and if such erection necessarily caused the surface water to stand upon plaintiff's land, or run into his cellar and well, he could recover therefor in this action, though such injury might not accrue for some time after the completion of such illegal act, viz.: the making of the road-bed and track. *Sedg. on Dam.* ch. 5 ; *Troy vs. Ches-*

*hire R. R. Co.*, 3 *Foster*, 83 ; *Chase vs. N. Y. Cent. R. R.*, 24 *Barb.* 273 ; *McGuire vs. Grant*, 1 *Dutcher*, [*N. J.*] 356 ; *Dickinson vs. Boyle*, 17 *Pick.* 78.

There was nothing permanent, however, in the nature of the injury which the defendant inflicted upon plaintiff by from time to time, even many times in a day, entering upon and passing with its trains over that portion of the track which is on plaintiff's land. Every such illegal act is a fresh trespass, as transitory in its character as the occasional piling of ties on his land while the road was building, or the leaving cars temporarily standing on the track after it was built.

The plaintiff considers, however, and this is the theory of the complaint, that the defendant has subjected the street to an additional servitude, without compensation to him, whereby his property is worth less than other property fronting on a wide street with no railroad on it. He observes that though he might have enjoined the defendant from using the road till the damages were paid or assessed, he has been content to leave it to a jury to assess them, and on their being so assessed and paid, the fact could be pleaded in bar to another action. That is to say, he considers the defendant as having taken the street imposing upon it the additional servitude of its road, and that he is to recover in this action that compensation for such taking, without which the constitution forbids private property to be taken for public use. In this, however, the plaintiff overlooks the fact that the defendant cannot, by wrong, impose such additional servitude on said street, except by an adverse possession for such purpose of the land, continued for the requisite period. It is as incorrect to speak of the defendant as having imposed such servitude on said street, by building its track on it and passing over it daily with its engine and cars from 1868, to the commencement of this suit, as it would be to say that one who against my consent should

Adams v. The Hastings & Dakota Railroad Co.

have constructed a foot path through my field, and used it daily for the same length of time, had imposed the servitude of such a foot path on my field. It is true, that in Gray's case above referred to, it is said, in respect of similar acts to those of this defendant, "that there can be no question that the acts charged are a taking of private property." This remark, however, is to be understood in reference to the provision in the charter of the defendant in that case, that it should have authority, after taking the land of individuals to occupy, use and enjoy the same for any of its lawful purposes from the time of such taking till a refusal to pay the compensation therefor assessed, upon the proceedings thereby authorized. This court held, that as such acts amounted to that taking of private property for a public use which the constitution forbids unless upon just compensation, the charter was no authority in law therefor, that is to say that it was a wrongful taking.

The fact, however, that the defendant's acts amounted to the taking which the constitution forbade, could not authorize plaintiff to have his damages assessed upon the basis that the defendant, by right or by wrong, would permanently continue to use his land as it had done. The defendant would have acquired no right in that behalf by such wrongful acts, and, as we have seen, it would be pure assumption that such wrongful acts would be continued in the future.

At the trial the plaintiff, as additional items of damage to the construction and use of the road, testified that while the work was going on the defendant piled cross-ties in front of his house so as to render travel impossible; that after they were removed, it encumbered the street with material for depot and bridge against his repeated protest, that the obstruction of the street and building of the road rendered it difficult to use the street in front of the premises. That the

narrowness of the street [forty-five feet] between the railroad and his premises rendered it difficult in the night or day time to drive along Bailly street to get to his house; especially when the cars were running he could not cross the street with any kind of a vehicle in front of his lot; that freight cars and other rolling stock had sometimes been left on the track in front of his house; that said embankment caused the water fron the south and west to flow up and overflow on his premises, and greatly injure his cellar and well; that his cellar was always dry and his well of water always good until the railroad was built.

It appears that the cars commenced running in October, 1868, and that this action was commenced in May, 1869; that the plaintiff's premises are part of a lot on the corner of said Bailly street and Third street, distant twenty feet more or less from the corner, and front eighty-four feet on Bailly street.

Supposing the jury to have put implicit faith in the above stated testimony, still, a verdict of $1,000 cannot be accounted for upon the supposition that they understood what the proper measure of damages was, and applied their knowledge to the facts. But their action is intelligible, if we suppose they embraced the theory of the complaint, i. e., looked at Bailly street as subjected to the additional burden of a railroad in respect of which the plaintiff in so far as he owned the soil of the street was entitled to that just compensation without which private property is not to be taken for public use.

For the plaintiff who had testified that his property was worth $3,500 before the laying down of the track, was allowed, the defendant objecting, in answer to the question, What was its value *after the taking* and at the time of the commencement of the action? to state that after the obstruction made by building the railroad, it did not exceed $2,000 or $2,200.

One Grosvenor, also, was allowed to state that it was worth

Adams v. The Hastings & Dakota Railroad Co.

from $1,500 to $2,000, without reference to the railroad; that before the railroad was built it was worth $2,500; that the building of the railroad depreciated the value of the property. And one Gillett was allowed to testify, that in his judgment the value of the property was depreciated one-half after the building of the railroad.

It is manifest that these witnesses are not testifying to any supposed depreciation occasioned by the mere construction of that part of the defendant's road-bed and track lying on plaintiff's property. Their opinions are not the result of any calculation as to how much the plaintiff's property has been lessened in value by the mere fact, that so much of Bailly street to its centre as is in front of plaintiff's lot has upon it an embankment of from ten to eighteen inches high and about ten feet wide, with cross-ties thereon and an iron rail affixed to them.

On the contrary, it is perfectly plain that they testify just as they would before a jury, in a proceeding under defendant's charter, empannelled to assess the compensation due plaintiff by the taking or injuriously affecting his property for its uses, as specified in said charter.

It would seem to have been impossible but that the jury should have received this evidence under the same impression as that under which it was given.

Nor can we discover that the charge was calculated to remove this erroneous impression. The jury were instructed, at plaintiff's request, that " if they believed that the defendant did build and construct a railroad in and upon Bailly street in front of plaintiff's premises, without his consent, or paying him the amount of damages he sustained by reason of the construction and running of said railroad, or causing *said damages* to be assessed as required by law, then the defendant was a trespasser, and the plaintiff is entitled to recover such

amount of damages as he has sustained by reason of the construction and running of said railroad and the obstruction of said Bailly street."

From the use by the court of the words we have italicised, the jury must necessarily have received the idea, that the damages recoverable in this action-were identical with those to be assessed in a proceeding to obtain the right of way.

They were also told at plaintiff's request, that " in arriving at the amount of damages the plaintiff has sustained by reason of the construction of the railroad on Bailly street, and the obstruction of the same by the defendant, the jury have a right to take into consideration the condition of said street and premises before the construction of said railroad, and the depreciation of plaintiff's property by reason of the same, and their verdict should be for such an amount of damages as from all the circumstances the plaintiff has shown he has sustained by reason of the construction of said railroad."

As this is not limited to that part of the street in front of plaintiff's premises, it would be entirely natural for the jury, with the evidence already referred to before them, to look at that in respect of which plaintiff was entitled to damages, as being a railroad built on and along the street generally, not merely in front of plaintiff's above described premises. We think the misleading tendency of these instructions justify the defendant's exceptions to them.

It is true that the court, at defendant's request, also instructed the jury that if they should find the plaintiff entitled to damages, " he is only entitled to recover damages from the time of the commencement of the injury complained of up to the time of the commencement of this action, and are not authorized to take into consideration any matters subsequent to the commencement of this action."

If, however, the jury were under the erroneous impression

Adams v. The Hastings & Dakota Railroad Co.

aforesaid as to the nature of the injury complained of, viz.: that it was the imposition of an additional servitude on the street, such instruction would not help the case, for *that* injury would be complete before action brought.

The court, indeed, also instructed the jury, at defendant's request, that in assessing the damages they were not to take into consideration any permanent injury to the premises; that plaintiff could only recover such damages as he sustained between the commencement of building and commencement of suit.

If, however, the jury had already received the erroneous impression aforesaid, they would necessarily conceive that the imposition of such additional servitude was an injury sustained before the commencement of the suit, and as the court gives no definition of a permanent injury, we do not see how this instruction, inconsistent as it is with those already given at plaintiff's request, would remove any existing false ideas in the mind of the jury as to the proper measure of damages. Upon the whole matter we have no reason to doubt but that substantial justice was done by the order granting a new trial.

Order appealed from affirmed.