## THE NATIONAL COPPER COMPANY v. THE MINNESOTA MINING COMPANY.

*Mining companies—Breach of partition—Damnum absque injuria.*

1. Breaking through the partition wall of an adjoining mine is not necessarily a trespass if not incident to an encroachment upon the latter's premises; and even if there were such encroachment the flow of water through the opening after the right of action for the original trespass has been barred by lapse of time, cannot be connected with such trespass so as to defeat the operation of the statute of limitations. The mere continuance of the breach is no injury in itself, and as the right of action for the original trespass would have covered the cost of repairing the breach, the bar of the statute destroys that remedy. And a subsequent flooding will sustain no right of action if it only resulted from the exercise, by either mining company, of its right to discontinue operations, or to go on after the other has discontinued.

2. A right of action does not arise from damage done unless there is also a wrong, and as the mere exercise of a right cannot be a legal wrong, if damage results it is damnum absque injuria.

Error to Ontonagon.   (Williams, J.)   April 28–9.—June 3.

TRESPASS.   Defendant brings error.   Reversed.

*T. L. Chadbourne* for appellant.   In trespass the unlawful
invasion is the injury and cause of action ; its consequences
are merely elements of damage : Bainbridge on Mines (1st
Am. ed.) §§ 574, 475 ; *Vedder v. Vedder* 1 Den. 257 ; 3
Suth. Dam. 403 ; *Thompson v. Ellsworth* 39 Mich. 724 ;
*Derry v. Flitner* 118 Mass. 133 ; *Welch v. Ware* 32 Mich.
80 ; *Allison v. Chandler* 11 Mich. 542 ; *Dickinson v. Boyle*
17 Pick. 78 ; *Cumberland &c. Co. v. Hitchings* 65 Me. 142 ;
*Clegg v. Dearden* 12 Q. B. 576, distinguishing *Holmes v.
Wilson* 10 A. & E. 503 and *Thompson v. Gibson* 7 M. &
W. 456 ; *Williams v. Pomeroy Coal Co.* 37 Ohio St. 583 ;
*Leroy v. Springfield* 81 Ill. 114 ; *Howell v Young* 5 B. &
C. 259 ; *Gustin v. Jefferson County* 15 Ia. 158 ; *Hartford
County Bank v. Waterman* 26 Conn. 324 ; *Kerns v. Schoon-
maker* 4 Ohio 331 ; *Wilcox v. Plummer* 4 Pet. 172 ; a
nuisance as distinguished from a trespass is something not
per se harmful which does injury : Wood on Nuisances
[*]1, 20 ; but there can be only one recovery for continuing
nuisances where the continuance itself is an injury : *Troy v.
Cheshire R. R. Co.* 23 N. H. 102.

*Chandler, Grant & Gray* and *G. V. N. Lothrop* for
appellee, as to what are successive trespasses constituting
fresh causes of action : *Bowyer v. Cook* 4 C. B. 236 : *Russell
v. Brown* 63 Me. 203 ; *Esty v. Baker* 48 Me. 495 ; *Battis-
hill v. Reed* 18 C. B. 696 ; *Plate v. N. Y. Cent. R. Co.* 37
N. Y. 472 ; *Mersereau v. Pearsall* 19 N. Y. 108 ; *Langford
v. Owsley* 2 Bibb 215 ; *Baldwin v. Calkins* 10 Wend. 169 ;
*Cobb v. Smith* 38 Wis. 21 ; *Carl v. Sheboygan & Fond du-
Lac R. Co.* 46 Wis. 625 ; *Ford v. Chic. &c. R. R. Co.* 14
Wis. 609 ; *Winchester v. Stevens Point* 58 Wis. 350 ; *Har-
rington v. St. Paul &c. R. R. Co.* 17 Minn. 215 : *Adams
v. Hastings &c. R. R. Co.* 18 Minn. 260 ; *McGuire v. Grant*
25 N. J. L. 356 ; *Dickinson v. Boyle* 17 Pick. 78 ; *Ander-
son v. Kernodle* 54 Ind. 314 ; *Percival v. Stamp* 9 Exch.
167 ; *Loweth v. Smith* 12 M. & W. 582 ; *Monckton v. Pash-
ley* 2 Ld. Raym 976 ; Hilliard on Torts 74 ; damages for
overflow into a mine included the total cost of machinery
made necessary in consequence, in *Horner v. Watson* 79 Penn.
St. 246 ; see *Barnett v. St. Anthony Falls Water Power
Co.* 33 Minn. 265.

COOLEY, C. J.   This is an action of trespass.   The following is a statement of the case, as made for the plaintiff, for the argument in this Court:

"The plaintiff and defendant are corporations, which for twenty-five years and more have been engaged in copper mining in Ontonagon county.   Their mines adjoin each other.   Each owns the land in fee on which its mine is situated.   The plaintiff, in carrying on its mining operations, left a wall of rock, from fifteen to eighteen feet thick, next to the boundary line of defendant's mine.   This was left as a barrier and protection to its mine against water or other encroachments from the Minnesota.   The Minnesota left no such barrier; it not only worked up to the boundary line, but broke through into defendant's mine.   About the year 1866 the plaintiff, at about forty feet above its fourth level, and from twenty to twenty-five feet from the boundary line, drilled a hole, of the ordinary size, about one and one-half inches in diameter, and when the blast was fired it blew through into the opening which had been previously made by the defendant into the plaintiff's territory.   The drill-hole was left through from two to two and one-half feet of solid rock.   Capt. Chynoweth, then the agent of plaintiff, examined this hole and the surroundings, and immediately gave orders to cease work there.   This was done as a further protection against the defendant.   No work was done at this point after that until the winter of 1883–4.   The plaintiff had no knowledge of any further trespass at this point until February, 1884, under the circumstances related hereafter.   The pump of the defendant was stopped in 1870, and that of the plaintiff in 1871 or 1872.   Plaintiff's mine filled up to the adit level in about five years.   Since 1870 the defendant has worked its mine more or less upon tribute, and so did the plaintiff, until May 1880, when it resumed work.   In order to avoid liability for the trespass committed by it at the plaintiff's fourth level (being the defendant's fifth level), the defendant sought to show, and did show, another hole at the first level, between the two mines.   A continuation of the inquiry showed that this hole also was about twenty feet from the boundary line, on the plaintiff's side, and that defendant had here trespassed twenty feet upon plaintiff's land.   We do not think that the history of mining upon Lake Superior will disclose another instance of such reckless disregard of the rights of an adjoining mine-owner.   This encroachment and trespass by the defendant at the defendant's fifth level occurred about the year 1859.

In May, 1880, the plaintiff resumed mining operations and commenced to pump the water from its mine. The six-inch pump, formerly used by the mine, and which had always been adequate to keep the mine unwatered, proved wholly inadequate, and it was compelled to get a twelve-inch pump, and even this was not sufficient in the spring; and in 1882 the water gained on them one hundred and twenty feet, and in 1883, two hundred and twenty-two feet, with the pump working night and day. Capt. Parnell, the agent of the plaintiff's mine, was thoroughly acquainted with it, having worked in the mine years before; he soon became convinced that the bulk of the water came from the defendant's mine. He found that the water came from the fourth level. He cleaned out the level, and, on reaching the point where the drill-hole had been made years before, he found that the rock had been all blasted away from the Minnesota side, and that the water was rushing through an opening from twenty to twenty-five feet high and twelve feet wide. When discovered there was a volume of water seven feet wide flowing from the Minnesota into the National. When the defendant made its second encroachment at this point does not clearly appear; according to the defendant's witness Spargo it was in 1871 or 1872. This witness was an employe of the defendant, and one of its tributors. He says he saw the hole from the Minnesota side, and it was then six to eight feet high, and from four to five feet wide. William George, a witness for defendant, last saw the hole in 1870 or 1871. It was then about a foot in diameter. The witness was then working for the defendant as tributer and captain. Thomas James was in charge of the mine. He admits that the defendant's tributers were then mining there. This same Capt. James has been in charge of the defendant's mine as agent ever since.

It was not denied in the court below, and we presume will not be in this Court, that the defendant committed these several acts of trespass. But, in proof of the fact, we refer to the admission of the agent Harris, the evidence that the track of a tram-road, sollars, and a system of timbering were found constructed from the fifth level of defendant's mine into this opening, and the testimony of plaintiff's witnesses already referred to. Furthermore, it is beyond dispute that the defendant *knowingly* and *willfully* committed these acts of trespass, and broke down the barrier which the plaintiff had so carefully left to protect its mine for all future time, and against all possible dangers.

About 1870 the defendant concluded to abandon regular

mining, stopped its pumps, and commenced what is known among miners as robbing the mine. It placed its tributers at work at the bottom of the mine, took out all the copper ground that could be found, took out the supports of the roof of the mine, and allowed it to settle or cave in. This was all done under the direction of the defendant's agent, James. The defendant's mine is situated upon a hill or mountain side. The result was that the surface of the ground became depressed, and openings were made in it. Defendant's agent, James, testified to openings of this character on the surface of the Minnesota, amounting in all to over five hundred feet in length ; some were three or four feet wide. Into these openings the water from rains and melting snow ran into the defendant's mine, and from thence flowed into the plaintiff's mine, through the opening at its fourth level. But for these openings the water would have run down the hill-side. As one of defendant's own witnesses expressed it, ' There has been a general falling away of the bluff.' There were no such openings on the surface of the National. In fact, we everywhere find the plaintiff conducting its mining operations with due regard to the rights of adjoining owners; while we find the defendant conducting its operations in the most reckless disregard of such rights."

The above is a sufficient statement of the facts for a discussion of the principal question in the case, viz.: Is the plaintiff's right of action barred by the statute of limitations?

The count in the declaration on which the parties went to trial alleged that the defendant, on March 15, 1882, and on divers days and times between that day and the commencement of suit, with force and arms broke down the partition wall between the mine of the plaintiff and the mine of the defendant, and let the water from its said mine into the mine of the plaintiff, and then and there filled the mine of the plaintiff with water, greatly damaging its timbering, workings, walls, and machinery, hindered and prevented the plaintiff from carrying on and transacting its lawful and necessary affairs and business, caused the plaintiff great damage and expense in removing water from its mine, etc.

The defendant pleaded the general issue, with notice that the statute of limitations would be relied upon. The plaintiff recovered a large judgment.

I. The time limited for the commencement of suit for trespass upon lands in this State is two years from the time the right of action accrues.    How. Stat. § 8714.    This action was commenced in May, 1884, and it is not claimed that damages for the original trespass can be recovered in it. The contention of the plaintiff may be succinctly stated as follows:

1. Had the plaintiff instituted suit within two years from the original trespass, the recovery would have been limited to such damages as were the direct and immediate result of the trespass.    The subsequent flowage of water through the opening was not the direct, immediate, or necessary result of breaking down the barriers; therefore no damages could have been recovered therefor in an action so brought.

2. Two trespasses may be the result of one act.    In other words, one trespass may cause another, and he who commits the wrongful act in such a case will be responsible for both trespasses.

3. In this case no action accrued for the flowage of water into the plaintiff's mine until the flowage actually took place, but when the flowage occurred as a result of defendant's wrongful act it was a trespass, and if it continued from day to day there was a continuous trespass for which repeated actions might be maintained.

Upon these positions the plaintiff plants its case, and unless they are sound in law the recovery cannot be supported.  All right of recovery for the original trespass, which consisted in breaking through into the plaintiff's mine, was long since barred, and it is not claimed that there was, from the time of the first wrong, a continuous trespass which can give a right of action now.  The merely leaving an opening between the two mines is not the wrong for which suit is brought, but it is the flowing of water through the opening which is complained of as a new trespass; the original wrongful act of the defendant in breaking through being the cause, and the injurious consequence when it happened, connecting itself with the cause to complete the right of action.

In support of its contention that the case before us may be

regarded as one of continuous trespass from the first, several authorities are cited for the plaintiff, which may be briefly noticed.   Among them is *Holmes v. Wilson* 10 Ad. & El. 503.   It appeared in that case that a turnpike company had built buttresses on the plaintiff's land for the support of its road.   The act was a trespass, and the plaintiff recovered damages therefor; but this, it was held, did not preclude its maintaining a subsequent action for the continuance of the buttresses where they had been wrongfully placed.   The ground of the decision was that in the first suit damages could be recovered only for the continuance of the trespass to the time of its institution.   There could be no legal presumption that the turnpike company would persist in its wrongful conduct, and, consequently, prospective damages, which would only be recoverable on the ground of such persistent wrong-doing, would not have been within the compass of the first recovery. The cases of *Bowyer v. Cook* 4 C. B. 236 ; *Thompson v. Gibson* 7 M. & W. 456 ; *Russell v. Brown* 63 Me. 203 ; and *Powers v. Council Bluffs* 45 Ia. 652, are all decided upon the same principle.   *Cumberland &c. Co. v. Hitchings* 65 Me. 140, was one of the wrongful filling up of a canal by a trespasser.   It was held that the trespasser was under legal obligation to remove what he had unlawfully placed on the plaintiff's premises, and that, so long as he suffered the obstruction to remain, he was guilty of a continuous trespass from day to day.   In *Adams v. Railroad Co.* 18 Minn. 260, and *Troy v Railroad Co.* 23 N. H. 83, railroad companies which, by trespass, had entered upon the lands of individuals and constructed and begun the operation of railroads, were held liable as trespassers from day to day so long as the operation of the road was continued.   The principle of decision in all these cases is clear and not open to question.   In each of them there was an original wrong, but there was also a persistency in the wrong from day to day; the plaintiff's possession was continually invaded, and his right to the exclusive occupation and enjoyment of his freehold continually encroached upon and limited.   Each day, therefore, the plaintiff suffered a new wrong, but no single suit could be made to embrace prospec-

tive damages, for the reason that future persistency in the wrong could not legally be assumed.

To make these cases applicable, it is necessary that it should appear that the action of the defendant has been continuously wrongful from the first. Whether it can be so regarded will be considered further on. The plaintiff, however, does not, as we have seen, rely exclusively upon this view. Its case is likened by counsel to that of a farmer, whose fences are thrown down by a trespasser ; the cattle of the trespasser on a subsequent day entering through the opening. In such a case it is said there are two trespasses; the one consisting in throwing down the fences, and the other in the entry of the cattle; and the right of action for the latter would accrue at the time the entry was actually made. The plaintiff also cites and relies upon a number of cases in which the act of the party which furnishes the ground of complaint ante-dates the injurious consequence, as the original trespass in this case antedated the flowing from which the plaintiff has suffered damage.

One of these cases is *Bank of Hartford County v. Waterman* 26 Conn. 324. In that case action was brought against a sheriff for a false return to a writ of attachment. The falsity consisted in a misdescription of the land attached. When suit was brought, the period of limitation, if it was to be computed from the time the return was made, had already run ; but under the statute the plaintiff was entitled to bring suit only after he had taken out execution and had a return made upon it, which would show a necessity for a resort to the attached lands. It was only after such a return of execution that the plaintiff would suffer even nominal damage from the official misfeasance; and it was therefore a necessary consequence that the time of limitation must be computed from that time, and not from the time of the false return.

Another case is that of *McGuire v. Grant* 25 N. J. L. 356, which is to be referred to the same principle. The defendant removed the lateral support to the plaintiff's land by an excavation, made within his own boundaries. Injury subsequently resulted to the plaintiff in consequence. The statute

of limitations was held to run from the time the damage occurred ; the excavation not being of itself a tort until damage resulted. The case of *Bonomi v. Backhouse* El. Bl. & El. 622, was like the last in principle, and was decided in the same way.

The plaintiff also, in this connection, likens its case to that of one who, in consequence of a ditch dug upon his neighbor's land, has water collected and thrown upon his premises to his injury. It is not the act of digging the ditch that sets the time of limitation to running in such a case, but it is the happening of the injurious consequence.

The case supposed, however, is not a case of trespass. The act of digging the ditch was not in itself a wrongful act. The owner of land is at liberty to dig as many ditches as he pleases on his own land, and he becomes a wrong-doer only when, by means of them, he causes injury to another. If he floods his neighbor's land the case is one of nuisance, and every successive instance of flooding is a new injury. But here, as in the case of a continuous trespass, prospective damages cannot be taken into account, because it must be presumed that wrongful conduct will be abandoned rather than persisted in, and that the party will either fill up his ditches or in some proper way guard against the recurrence of injury. *Battishill v. Reed* 18 C. B. 696. Cases of flood-ing lands by dams or other obstructions to running water are cases of this description. *Baldwin v. Calkins* 10 Wend. 169 ; *Mersereau v. Pearsall* 19 N. Y. 108; *Plate v. Railroad Co.* 37 N. Y. 472. So are cases of diverting water, to the flow of which upon his premises the plaintiff is enti-tled. *Langford v. Owsley* 2 Bibb 215. So are cases of the wrongful occupation of a public street, whereby the access of the plaintiff to his premises is obstructed. *Carl v. Rail-road Co.* 46 Wis. 625. Other cases cited for the plaintiff, and resting on the same principle, are *Thayer v. Brooks* 17 Ohio 489 ; *Blunt v. McCormick* 3 Den. 283 ; *Winchester v. Stevens Point* 58 Wis. 350 ; *Union Trust Co. v. Cuppy* 26 Kan. 754; *Spilman v. Roanoke Nav. Co.* 74 N. C. 675 ; *Loweth v. Smith* 12 M. & W. 582. The case of *Whitehouse*

*v. Fellowes* 10 C. B. (N. S.) 765, was one of nuisance. A
turnpike company made a covered drain with gratings at
intervals and catch-pits. In consequence of the insufficiency
of the catch-pits, or of their not being kept in proper condi-
tion, the plaintiff's colliery was flooded every time there was
a heavy shower. In an action for this flooding it was held
that every damage was a new injury and gave a new right
of action. The ruling sustained the position taken for the
plaintiff in the case, which was thus succinctly stated by
counsel arguendo : " The distinction which pervades the
cases is this : Where the plaintiff complains of a trespass,
the statute runs from the time when the act of trespass was
committed, except in the case of a continuing trespass. But
where the cause of action is not in itself a trespass, as an act
done upon a man's own land, and the cause of action is the
consequential injury to the plaintiff, there the period of limi-
tation runs from the time the damage is sustained."

The case before us was one of admitted trespass, from
which immediate damage resulted. Had suit been brought
at that time, all the natural and probable damage to result
from the wrongful act would have been taken into account,
and the plaintiff would have recovered for it. But there
was no continuous trespass from that time on. The defend-
ant had built no structure on the plaintiff's premises, was
occupying no part of them with anything it had placed
there, and was in no way interrupting the plaintiff's occupa-
tion or enjoyment. All it had left there was a hole in the
wall. But there is no analogy between leaving a hole in a
wall on another's premises and leaving houses or other
obstructions there to encumber or hinder his occupation ; the
physical hindrances are a continuance of the original wrong-
ful force, but the hole is only the consequence of a wrongful
force which ceased to operate the moment it was made.

If, therefore, the plaintiff had brought suit more than two
years after the original trespass, and before the flooding of
its mine by water flowing through the opening had begun,
and if the statute of limitations had been pleaded, there could
have been no recovery. The action for the original wrong

would then have been barred, and there had been no repeti-
tion of the injury in the mean time to give a new cause of
action. The mere continuance of the opening in the wall
could not be a continuous damage. *Lloyd v. Wigney* 6
Bing. 489. The right of action, if any, for which the plaint-
iff can complain, must therefore arise from the flowing itself
as a wrongful act; there being no longer any action for the
original breaking, and no continuous acts of wrong from that
time until the flowing began.

The flowage caused a damage to the plaintiff; but damage
alone does not give a right of action; there must be a con-
currence of wrong and damage. The wrong, then, must be
found in leaving the opening unclosed and permitting the
water to flow through. It must therefore rest upon an obli-
gation on the part of the defendant either to close the open-
ing, because persons for whose acts it was responsible had
made it, or to restrain water which had collected on its own
premises from flowing upon the premises of the plaintiff to
its injury. The latter seems to be the ground upon which
the plaintiff chiefly relies for a recovery.

In the argument made for the plaintiff in this Court stress
is laid upon the fact that the damage which has actually re-
sulted from the flooding could not have been anticipated at
the time of the original trespass, and therefore could not then
have been recovered for. This consideration, it is urged,
ought to be decisive. But, while we agree that it is to be
considered in the case for what it is worth, it is by no means
necessarily conclusive. The plaintiff must fix some distinct
wrong upon the defendant within the period of statutory
limitation, or the action must fail; and there is no such
wrong in this case unless the failure to prevent the flowing
constitutes one. The original act of wrong is no more in
question now, after having been barred by the statute, than
it would have been if damages had been recovered or settled
for amicably; nor do we see that it can be important in a
case like the present, where the wrong must be found in the
injurious flowing, whether there was or was not a wrong
originally. If there was, it stands altogether apart from the

wrong now sued for, with an interval between them when no legal wrong could have been complained of.

The mere fact that an opening was made by the defendant between the two mines, would not of itself have been a tres pass unless the defendant invaded the plaintiff's premises in making it. Each party had a right to mine on its own side to the boundary. *Wilson v. Waddell* L. R. 2 App. Cas. 95; and if the plaintiff had first done so, the defendant might have done the same at the same point, and in that way have made an opening rightfully. The difference between the case supposed and this is, that here the defendant was found to have gone beyond the boundary and committed a trespass. But suppose the defendant had then made compensation for the trespass, so far as it was then damaging, how would the case have differed from the present? The opening would remain, made by the defendant, through which, if the water was allowed to collect in his mine, it must eventually pass; and if he was under obligation to keep it within the bounds of his own premises, he would be liable for allowing it to pass: otherwise not. The fact that compensation was not actually made for the breaking away of the plaintiff's barrier is immaterial when the statute has run, as has been already explained.

The case of *Clegg v. Dearden* 12 Q. B. 576, is not unlike in its facts the case before us. In that case, also, there had been a wrongful breaking through from one mine to another, and an injurious flowage of water through the opening. The facts were found by special verdict, and Lord Denman, in pronouncing judgment, said, "The gist of the action, as stated in the declaration, is the keeping open and unfilled up an aperture and excavation made by the defendant into the plaintiff's mine. By the custom the defendant was entitled to excavate up to the boundary of his mine without leaving any barrier: and the cause of action, therefore, is the not filling up the excavation made by him on the plaintiff's side of the boundary and within their mine. It is not, as in the case of *Holmes v. Wilson* 10 Ad. & El. 503, a continuing of something wrongfully placed by the defendant upon

the premises of the plaintiffs; nor is it a continuing of something placed upon the land of a third person to the nuisance of the plaintiffs, as in the case of *Thompson v. Gibson* 7 M. & W. 456. There is a legal obligation to discontinue a trespass or remove a nuisance; but no such obligation upon a trespasser to replace what he has pulled down or destroyed upon the land of another, though he is liable in an action of trespass to compensate in damages for the loss sustained. The defendant having made an excavation and aperture in the plaintiffs' land was liable to an action of trespass: but no cause of action arises from his omitting to re-enter the plaintiffs' land and fill up the excavation: such an omission is neither a continuation of a trespass nor of a nuisance; nor is it the breach of any legal duty. It was, however, contended on the part of the plaintiffs, that, admitting this to be so, there nevertheless was a legal obligation or duty upon the defendant to take means to prevent the water from flowing from his mine into that of the plaintiffs through the aperture he had made;" but " the plaintiffs have not alleged any such duty or obligation in their declaration, nor is their action founded upon a breach of any such duty, if it exists, but upon the omission to fill up the aperture made by them in the plaintiffs' mine. It appears to us that the defendant, upon the facts found by the jury, is entitled to have the verdict entered for him upon the plea of not guilty."

If this case was rightly decided, it should rule the one before us. It has been followed by the Supreme Court of Ohio in *Williams v. Pomeroy Coal Co.* 37 Ohio St. 583, in a case which also closely resembles this upon its facts, and is not distinguishable in principle.

It seems to us that these cases are sound in law as well as conclusive. The only wrongful act with which the defendant is chargeable, was committed so long before the bringing of suit that action for it was barred. Had suit been brought in due time, recovery might have been had for all damages which could then have been anticipated as the natural and probable result of the wrongful act. If the particular damages which have been suffered could not then have been

anticipated, it is because it could not then be known that the defendant would cease mining operations and the plaintiff would not. There could be no flowing from one mine into the other while both were worked; and had the plaintiff ceased operations and the defendant continued to work, the defendant would have suffered the damage instead of the plaintiff. But neither party was under obligation to keep its mine pumped out for the benefit of its neighbor. Either was at liberty to discontinue its operations and abandon its mine whenever its interest should seem to require it. And had the plaintiff brought an action within two years from the time of trespass, its recovery would necessarily have been had with this undoubted right of abandonment in view. But a jury could not have awarded damages for any exercise of a right, and they could not, therefore, have given damages for a possible injury to flow from such an abandonment. This is on the plain principle that the mere exercise of a right cannot be a legal wrong to another, and if damage shall happen, it is damnum absque injuria.

This view of the case is conclusive; but there is another that is equally so. The wrong to the plaintiff consisted in breaking down the wall which had been left by it in its operations. If any damage might possibly result from this which was not then so far probable that a jury could have taken it into account in awarding damages, the plaintiff was not without redress. It would have been entitled in a suit then brought to recover the cost of restoring the barrier which had been taken away; and if it had done so, and made the restoration, the damage now complained of could not have happened. It thus appears that complete redress could have been had in a suit brought at that time; and, that being the case, the plaintiff is not entitled to recover now for an injury for which an award of means of prevention was within the right of action which was suffered to become barred. The right which then existed, being a right to recover for all the injury which had then been suffered, including the loss of the dividing barrier, it would not have been competent for the plaintiff, had suit then been brought, to

leave the loss of the barrier out of account, awaiting possible special damages to flow therefrom as a ground for a new suit. The wrong which had then been committed was indivisible ; and the bar of the statute must be as broad as the remedy was which it extinguishes.

The judgment must be set aside and a new trial ordered.

The other Justices concurred.

57    97
83    364

57    97
85    275

57    97
110    44

57    97
s23NW 600
131    ²685

