DUFF v. UNITED STATES GYPSUM CO.

(Circuit Court, N. D. Ohio, W. D. January 4, 1911.)

No. 2,184.

1. MINES AND MINERALS (§ 123*)—INJURIES BY FLOWAGE—OPERATION OF MINE.

Though the owner of a gypsum mine which is operated in a natural and reasonable way is not liable to an adjoining mineowner for injuries from water percolating from the former mine into the latter, a petition alleging that the defendant mineowner carelessly and negligently excavated its tunnels in the direction of a bay, that it struck the waters of the bay, and the waters rushed in and completely flooded the mine, and, percolating into plaintiff's mine, caused the injuries complained of, is not subject to general demurrer.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 245; Dec. Dig. § 123.*]

2. LIMITATION OF ACTIONS (§ 55*)—COMPUTATION OF PERIOD—ACCRUAL OF CAUSE OF ACTION.

A cause of action for injury to a gypsum mine from water percolating from an adjoining mine, the owner of which had extended his excavations to a bay so that the mine became flooded, accrued at the date of such flooding.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 299–306; Dec. Dig. § 55.*]

Action by John Duff, receiver of the Consumers' Gypsum Company, against the United States Gypsum Company. Heard on demurrer to petition. Sustained.

John Duff, in pro. per.

King & Ramsey and Scott, Bancroft & Stephens, for defendant.

KILLITS, District Judge. The defendant demurs to the petition upon the grounds: (1) That the petition states no cause of action. (2) That the cause of action, if any, is barred by the statute of limitations. The facts briefly are as follows: The parties owned gypsum mines adjacent to each other and near Sandusky Bay. The defendant, in mining its property, broke into the waters of Sandusky Bay, which fact caused its mine to flood, and the waters thereafter, slowly percolating between the partition between its mine and the mine of the Consumers' Company, flowed into and destroyed the latter property.

[1] We have no doubt, following the authorities cited by the defendant, that, if the facts showed that the bringing of the waters of Sandusky Bay into the mine of the defendant was the result of a natural and reasonable course of mining, there could be no com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaint against the defendant by the plaintiff. This proposition seems obvious when we consider that no duty devolved upon the defendant to maintain its mine as a barrier between the waters of the bay and the mine of the plaintiff, for the reason that a controversy otherwise would always remain as to how much of the mine of the defendant should remain untouched and be left as a barrier, depending upon the character of the fissures and natural courses of percolation between the bay and the excavation the defendant might make. If it had a duty to maintain a barrier of any kind of gypsum between its excavation and the bay, so that the waters of the bay might not flow . through its excavation into the mine of the plaintiff, how wide should that barrier be? It seems to us that the mere putting of the question suggests that no such duty existed, and that it had the right, under the authorities, to which the court has been referred, in England and in this country, to mine all of its property profitable to be mined, provided it operated in a reasonable and natural way, no matter what the consequences might be to its neighbor.

But the form of the allegation in the petition in this case does not permit us to assume that the mining of the defendant, resulting in the intrusion of the waters of the bay, was of this character. To be sure, the averment is not directly that defendant carelessly and negligently excavated its tunnels in the direction of Sandusky Bay, but the whole averment in that behalf, namely, "On or about the 24th day of March, A. D. 1904, said defendant so carelessly and negligently extended said tunnels in the direction of said Sandusky Bay that it struck the waters of said bay, and thereupon said waters rushed in and completely flooded said mine," leads inevitably to the conclusion that the act was the result of want of reasonable foresight. In so deciding, we are not moved so much by the terms in which the averment is couched as by the fact which the averment sets forth, namely, that, as a result of the tunneling, the waters rushed in, for it would seem that common prudence and ordinary intelligence in driving a tunnel would have arrived at a warning of such catastrophe in ample time to have ceased operations and so to have avoided it. Therefore, without commending the pleading in that behalf, we feel that, as against a general demurrer, it is sufficient.

[2] Upon the second ground of the demurrer, it is the opinion of the court that the merits are with the defendant. If the mining of the defendant was without negligence, and the resultant flooding was but the effect of mining in a prudent and natural way in an attempt to exhaust the resources of the mine, then, under the authorities to which we have referred, there is no cause of action. It is only where some active negligence intervenes, either of commission or omission, that a cause of action arises, and, inevitably, from the facts of this case as pleaded in the petition, that active negligence is of the date of March 24, 1904. Then, and then only, it seems to us a cause of action accrued to the Consumers' Gypsum Company, and, under the statute of limitations of the state of Ohio applicable to this sort of case, suit must have been brought within four years from such date. It was not brought until the 29th of November, 1909, or more than five years thereafter.

We think that the cases of National Copper Company v. Minnesota Mining Co., 57 Mich. 83, 23 N. W. 781, 58 Am. Rep. 333, Williams v. Pomeroy, 37 Ohio St. 583, and Gillette v. Tucker, 67 Ohio St. 106, 65 N. E. 865, 93 Am. St. Rep. 639, the dissenting opinion of which has become the law of the state (see McArthur v. Bowers, 72 Ohio St. 656, 76 N. E. 1128), compel this view which we entertain of the operation of the statute of limitations.

The demurrer on the second ground is sustained with exceptions to the plaintiff.