ROBERT THOMPSON v. THE MORRIS CANAL AND BANKING COMPANY

On rule to show cause against a new trial.

Damages for injuries to real estate, ought to bear a fair and just proportion to the loss occasioned by them. Trespass to land, being of a visible, tangible

nature, admits of measurement and appraisal so nearly certain, that if a verdict be for a sum very disproportionate to the visible injury done without circumstances of ill will or malice, it will commonly be set aside for excessiveness.

The title to lands does not pass by a verdict for the plaintiff, in action of trespass; it remains in the plaintiff, and therefore a verdict for damages, to the full value of the land, is manifestly wrong.

The opinion of the Court, was delivered by

FORD, J. In an action of trespass against the Morris Canal and Banking Company, for breaking and entering the close of Robert Thompson the plaintiff, cutting and carrying away his timber, digging up and subverting his soil, and other injuries therein; the company was found guilty at the Circuit, and damages assessed against them to the amount of $11,291. On a motion to set aside the verdict, for excessiveness of damages, and other reasons presented by the defendants, the case appeared to be as follows:

That the Company were authorized, by an act of the legislature, to make a map and return of such lands as they, under oath, should deem necessary for the purpose of a Canal; that if they could not agree with the owners thereof touching the value of their land and their damages, that the same should be appraised by three freeholders to be appointed by one of the justices of this court; that on payment or tender of the sum so assessed, to any owner, the title to such land should become vested in the company. That a survey and map duly returned, took about eight acres and a half of a farm containing one hundred and sixty-five acres, belonging to the plaintiff; that no agreement could be effected with him touching the value of the said land and his damages, and that they were appraised by three freeholders, appointed as the act directs, at $2,422; and no exception having been taken by *Certiorari* or otherwise to those proceedings, that they remained of record, in full force and unreversed. It further appeared that the said value and damages, amounting to $2,422, had been duly tendered by the company to the plaintiff, whereby the money became as much his own as if it was in his purse; and the title of the eight and a half acres became vested in the company as fully for the purposes of the canal, as if the company had received a deed for the same from the plaintiff under his hand and

seal; and that the right to construct a canal on the eight and a half acres, was neither deniable nor denied. But it appeared that the company had gone over the eight acres and a half, and done many tortious acts on the plaintiff's adjoining land; that they had formed the canal itself, for some distance, over their line on his land; that during their operations they had cut down and carried away from his adjoining land considerable quantities of wood and timber; that large quantities of rock, stone, earth and gravel, excavated from the canal, they had drawn out and deposited about, in large heaps and masses, over three or four acres of land; that in order to obtain earth for making embankments, they had dug holes and pits in an acre or more of land near his dwelling house; that across a narrow inlet of water from the bay, expanding from its entrance over an acre of ground (which the plaintiff called a harbor and fishery) the company had erected a wall, forming one side of the canal, thereby stopping up the harbor and destroying the fishery; that they had erected a sea-wall or break-water along the shore of the bay in front of the farm, and cut off the water communication between it and the city of New York; and that their contractors, or agents, or some of them, had built on his land, a number of temporary huts called *shanties*, or cooking, eating and lodging houses for laborers, and that large quantities of wood in their vicinity, probably taken for fuel, had disappeared from his land.

Now the damages to be given for such injuries to real estate, ought, by law, to bear a fair and just proportion to the loss occasioned by them. According to *Co. Lit.* 257, *a.*, the legal meaning of damages is, "a recompense given for a wrong." Any plain and gross excess above a just and fair equivalent is a departure from that principle. But equivalents being not clearly ascertainable in such personal torts as battery, slander, seduction, deceits, and frauds, for want of any certain measure to go by, damages must be adjusted in such actions according to the circumstances of the case, by the discretion of a jury; and though all verdicts are subject to legal control, they are never disturbed by the court, where the jury, as in those cases, have no rule to go by, "unless the damages given are flagrantly and outrageously excessive, manifestly showing the jury to have been actuated by passion, partiality, corruption or prejudice." *Gil-*

*bert* v. *Burtenshaw, Cowp. Rep.* 231; *Ducker* v. *Wood,* 1 *Ter. Rep.* 277; *Hewlette* v. *Cruchley,* 5 *Taunt.* 277; *Deacon* v. *Allen,* 1 *South.* 338.

But trespass to land, not being of an ideal but of a visible tangible nature, admits of measurement and appraisal, so nearly certain, that honest minds seldom differ much about the amount; and if, in such case, the verdict be for a sum very disproportionate to the visible injury, without any circumstances of ill will or malice, it will commonly be set aside for excessiveness, and referred back to the country, for further inquiry.

Now for definite trespasses on land, such as come within the scope of this action, the jury ought to have awarded damages bearing a just and even liberal proportion to the injuries done to the land; whereas under color of doing so, they appear to have fallen into some gross errors and mistakes.

First, the inlet, harbor, and fishery being at the time of appraisement, the supposed property of Paul Saulter, the commissioners awarded to him for the same, the sum of $1,200; and the company, on payment or tender of the money to him, believing they had a good title for the property, entered and put up the wall in question. But evidence being adduced at the trial, proving that the property did not belong to Paul Saulter, but to Robert Thompson the plaintiff, it rendered the company trespassers in law, and exposed them to the payment of damages, for whatever expense the plaintiff would have to incur, probably four or five days' work, in removing the wall across this narrow gut of water; and for being two years out of possession of this supposed harbor and fishery, which, according to all the evidence in the cause, had never produced a shilling a year profit to any body. Probably a trifle more or less than ten dollars might have been a fair recompense for an injury thus committed by mistake. Yet the jury allowed in their verdict, for this single item, the enormous sum of $1,200! Probably the jury supposed that their verdict would convey the property to the company just as well as an appraisement by the commissioners; whereas the title will still remain in the plaintiff and his heirs. The commissioners will still have to appraise it, under oath, as the property of Robert Thompson, and this $1,200 must be paid over to him *twice* by the company for the same property if the present verdict

stands.    I am clearly of opinion, that it must be set aside on this ground if there were no other.    But

Secondly, The plaintiff's counsel, in stating the several items of damage, reckoned mor‹ than an acre of land dug into holes and pits near the dwelling house, and as many as three or four other acres having canal excavations piled up thereon in large heaps and masses; the damage whereof, he estimated at $150 an acre, being the greatest rate that could have been obtained for the land by a sale and conveyance in fee simple; thus for these damages, the plaintiff is not only to receive in cash all that the land could be sold for; but on the borders of this great and permanent canal, is to retain the land also for himself and his heirs.    Injuries to real estate are to be assessed, by law, in proportion to the damage they occasion; and if this rule of proportion is not to be maintained by the court, we may as well have no law on the subject.    Some jurors may deem an injury greater, and advocate a higher proportion of damages for it than others, differing only in the application of the rule; but here the rule is totally abandoned; the whole value of the land is given and the land also.    In trespass for taking *goods*, their value may well be the measure of damages, because they are transferred from the plaintiff to the defendant by the verdict, as by a sale for valuable consideration; but lands do not pass by the verdict, they remain still in the plaintiff, and therefore the full value of lands for an injury done to them, is manifestly wrong; unless it be a case requiring vindictive damages, over and above mere recompense, by way of punishment for wanton mischief or malicious and revengeful actions, sometimes called exemplary damages to deter men from such kind of conduct.    But these are injuries that almost unavoidably occurred in carrying on a great work of internal improvement, a work patronized by legislative wisdom, sanctioned by public opinion, and honorable to the age we live in; and by a public corporation, to whom malice or revenge cannot be imputed, because they are not the personal actors. They ought indeed to make a just and even liberal recompense for such injuries, though unavoidable, as the company commit in carrying on their works; but the full value of lands which are only injured, are vindictive damages, not measured according to the quantity of injury, and therefore illegal; constituting a rea-

sonable ground for sending this case to the calm and dispassionate consideration of another jury.

Thirdly, Towards vindicating the high amount of the verdict, the plaintiff's counsel enumerated the items composing it as follows: the commissioners awarded to the plaintiff for his eight acres and a half of land and damages $2,422; but the value of the harbor and fishery at $1,200 being put to another person by mistake, the addition of that sum will make their whole estimate amount to $3,622; then adding to it four or five acres ruined, since their appraisement, by pits and rubbish; the occupation of the farm by shanties; the wood and timber they destroyed and consumed; the stoppage of communication between the farm and city, by means of the wall; with some other items of minor importance; and the verdict, it was supposed, might be fairly justified.

But on what principle of law or reason could the jury possibly allow this $2,422 as damages? The commissioners had awarded this sum to the plaintiff in payment and satisfaction of the eight acres and a half of his lands and the company had tendered him the money and taken the land into their possession. The allowance could not have been made for trespassing on that land, because it was the property of the company, and they were not liable to damages for working on their own land. Nor could it be an allowance for the money awarded by the commissioners, because the proper remedy for that is by an action of debt. This sum is not even demanded in the declaration. Besides all which, the tender of this money to the plaintiff, has made it his own already, and the company can never take it back again; they must deliver it to him on demand, or pay it with interest and costs whenever he requires it. Now if this verdict be established, the company will be compelled to pay this $2,422 twice, and the plaintiff will obtain it twice inevitably; once in this suit under color of damages for trespass; and once more as money tendered to him and acklowledged to be due, by an award under the statute, for his land; and no court of law could possibly prevent this manifest injustice. But

Lastly, If the foregoing reasons should be laid entirely out of view, a court having the smallest legal discretion, over the justice of the cause, cannot help seeing that a jury who could render

$11,291 for damages to this property, must have been actuated by passion or prejudice, or both. This farm consisting of one hundred and sixty-five acres, with its vaunted harbor and fishery, in 1824, was sold to the plaintiff for its full value at $5,522. If any improvements whatever were proved to have been put on it since the purchase, they are very inconsiderable; and yet the damage done to the farm, is found to be a little more than double what it cost. But let us examine the case a little further. For only eight acres and a half of this farm, the company has been compelled to pay the plaintiff $2,422, and for the harbor and fishery containing an additional acre, they have to pay him, when they get a title, $1,200 more, making together, $3,622, though the whole place cost only $5,522. It might be inferred that these nine acres were the very cream of the farm, whereas such is very far from being the fact. Two of these acres are a barren strand on the bay, lying under a high, steep and craggy bluff, covered and lashed every tide with salt water, and requiring the company to erect a sea wall for its defence; two acres more are a hollow ravine or dell of naked rocks with hardly any soil; about two acres more are common salt marsh; and the residue are very little better. Yet for these comparatively miserable nine acres, the plaintiff receives of the company's funds $3,622, making his farm stand him in, instead of thirty-three which he gave for it, only about twelve dollars an acre. His remainder of the farm, is about one hundred and fifty-five acres, and that storm beaten strand, rocky dell and salt marsh are now converted into a smooth canal, stretching back one hundred miles, through a rich and fertile country, having on its margin, cities, manufacturing towns, villages, and depots, whose productions float down on one border of this farm, to the great commercial emporium of the Union. Yet for some injuries almost unavoidably happening in the execution of this great work, the jury have awarded to the plaintiff $11,291, making with the before mentioned sum, nearly $15,000 cash in hand, retaining, except ten acres, the whole of his original farm, which would now be, at this outrageous rate of estimation, worth not less than $80,000. Every person sees in this affair, at first blush, an allowance for damage to land, which is out of all proportion to the injury sustained; and it calls on the court to exercise that salutary discre-

tion which is vested in it by law, for the advancement of justice. I am therefore of opinion that the rule to show cause be made absolute, and that the cause be referred to the country for further inquiry.

*Rule absolute.*