Colonie street runs at right angles with and crosses Broadway in the city of Albany, and the defendant's railroad crosses the two streets diagonally at the place of their intersection, and had crossed there for at least forty years before the trial of this action. The plaintiff owned three houses and lots contiguous to each other situate on the northerly side of Colonie street and easterly of Broadway and of the railroad. The lot numbers are 85, 83 and 81, numbered in this order from Broadway. Lots 85 and 83 extend only to the northerly side of Colonie street, while lot 81 extends to the center thereof. When the railroad was originally built the two streets were somewhat raised. About the year 1874 two additional tracks were laid upon the defendant's road where it crossed the two streets, one of which was upon the easterly *Page 102 
side thereof, and the road-bed was raised at its intersection with Broadway from two and a half to three feet. It does not appear that either of the tracks or any part of the road-bed was upon any of plaintiff's land or that she received any damage whatever from them. But to accommodate the grade of Colonie street to the grade of the railroad it became necessary to raise the street and sidewalks thereof, and the consequence was that the street and sidewalk in front of plaintiff's lots were elevated about one foot, and all the damage of which plaintiff complains was caused by this elevation.
She alleged in her complaint that her lots extended to the center of the street; that the defendant entered upon her property (meaning her property in the street) and tore up the pavement, raised the street, sidewalks and gutters and so shaped the street and gutters as to pour the water therefrom down over the sidewalk into the basement of her houses by means of which her premises were made liable to be flooded with water, and had been flooded with water and were rendered damp, unhealthy and inconvenient of access, and her property therein had been injured, and the rental value, and the value thereof greatly depreciated. Many exceptions were taken at the trial on behalf of the defendant which its counsel argued before us and relied upon for a reversal of the judgment. But I shall notice those only which have reference to the rule of damages laid down by the trial judge. Upon the trial it was claimed on behalf of the defendant that the plaintiff could recover only such damages as she had sustained up to the commencement of the action. On the contrary her counsel claimed that she could recover damages upon the theory that the embankment placed in the street in front of her lots was to be permanent, and that thus it was a permanent injury to her lots, and so the law was ruled by the trial judge.
A witness for the plaintiff was asked this question: "What in your judgment was the value of these lots, 81, 83 and 85 Colonie street, before the grade was raised?" This was objected to by defendant's counsel as immaterial and incompetent, and the objection was overruled, and the witness answered that *Page 103 
each lot was worth $3,000, and was worth less after the change. Then he was asked this question: "How much would it be worth since the change in the street?" This was objected to by defendant's counsel on the grounds that it was immaterial and incompetent; that a change of market value between 1874 and that time was no evidence of damages in this action; that the question assumes that the damage was permanent; that the proper measure of damages was any injury to the rental value of the premises prior to the commencement of the suit and the cost of restoring the street to its former condition, and that there was nothing in the complaint or in the evidence which rendered material any evidence as to the market value of the property either before or after the alleged wrongful act. The trial judge ruled that he would allow the plaintiff to prove how much the rental of the property had been impaired down to the commencement of the action, and the actual injuries which the property had sustained by the flow of the water into, upon and against it by reason of the change of the grade of the street by the defendant, and to this ruling plaintiff's counsel excepted. Subsequently upon further argument on the next day the judge reversed his ruling and among other things said: "Yesterday an inquiry was made of counsel as to the act of the defendant in constructing the additional tracks and in raising the bed of the road. I understood it to be conceded that the act was a pure trespass, that the dumping of the ground in the street was a trespass, and that the construction of the tracks was a trespass, and the running of the cars was a trespass, and I, therefore, held that no court would be justified in assuming that an act of that character would be permanent; therefore, that the permanent depreciation in value of the property could not be the basis of the damages, but only the depreciated rental during the time of the continuance of the trespass up to the time of the beginning of the suit, and the actual injury which the flooding had done to the property. I think if these facts be conceded, that the plaintiff can only recover the rental which she had lost and the actual injury to the premises down to the time of the beginning of the suit." He then called attention to *Page 104 
the complaint and said that it did not charge that the defendant's acts were illegal, or that they were a pure trespass upon the street, and that the pleadings showed that the acts were legally done by the defendant under its charter; and further: "If that proposition be sound how can the court act upon an assumption that here was a mere trespass committed by the railroad company upon a street, which they had no right to do? My decision yesterday rested upon an assumption that purely and simply here was a trespass committed upon the street which the company had no right to commit, and which, because a trespass, the court could not assume would be of a permanent character. Upon that supposition, and upon that theory, it was held that the plaintiff could not recover as for a permanent injury to the property, but must be limited in her recovery to the damages which she had sustained by a loss of rental up to the time of bringing the action and to the actual injury done to the property." Plaintiff's counsel stated that "they had never claimed this was a case of mere trespass; that as to two of the lots they did not own the soil in the street and it could not be a trespass." The trial judge then held that because the acts of the defendant in the street were not illegal or unlawful and, therefore, not a trespass, they might be regarded as of a permanent nature, and that the plaintiff could, therefore, recover for the permanent injury done to her property, and he overruled defendant's objection to the question, and the witness answered that each lot immediately after the change was worth about $1,500. Similar questions put by plaintiff's counsel to other witnesses were objected to by defendant's counsel, the objections were overruled and the witnesses answered in substantially the same manner. Evidence offered by the defendant to show how much it would cost to restore the street to its former condition was, on the objection of the plaintiff, excluded.
At the close of all the evidence defendant's counsel moved for a nonsuit upon the following grounds: "(1) That no title has been proved in plaintiff in the property in question. (2) There is no proof of any interference by defendant with property in question. (3) Plaintiff has failed to make out a cause of *Page 105 
action. And upon the further ground there is no proof of any unlawful or illegal interference by defendant with the property in question." The trial judge said: "I agree with you there is no proof of any illegal interference. That involves another very grave question, I concede that," and he denied the motion and defendant's counsel excepted.
The judge charged the jury that the plaintiff could recover, for the permanent injury to her property, the diminished market value thereof. He was requested by defendant's counsel to charge as follows: "If the jury believe that the act of the defendant in raising the street was not unlawful, but was by the permission of the city of Albany, then the defendant is not, under the proof, liable to plaintiff for any injury done to the plaintiff by reason of such grade." The judge replied: "I decline to charge that. I admit that involves a very difficult problem of law." Defendant's counsel also asked him to charge: "If the jury believe such acts were done without the permission of the city and were unlawful, then the measure of damages would be the actual injury sustained by plaintiff before the commencement of this action, including the loss of rent and the injury to the use and enjoyment of the property before the commencement of the action, if any." And the judge said: "I decline to charge that, because there is no proof one way or the other upon the question. Whether there was an authorized or unauthorized act there is no presumption in favor of the trespass." Defendant's counsel further asked the judge to charge: "That upon the evidence the jury will not be justified in rendering a verdict for the supposed difference in market value in the premises before and after the act in question," and he refused so to charge; and to all the refusals defendant's counsel excepted. The judge then said: "For the purpose of presenting that question sharply, I neglected to charge as I shall do now that the plaintiff can recover the difference in the rental value of the property, provided you find that the act of the defendant has impaired the market value, and to the extent it has impaired it," and to this defendant's counsel also excepted.
At the General Term the rule of damages laid down by the *Page 106 
trial judge was approved for the reasons given by him, to-wit: that the raising of the street was not illegal or unlawful and was apparently permanent. Judge BOARDMAN writing an opinion in which Judge BOCKES concurred, among other things said. "The right of the defendant to occupy the street must be presumed from the length of time it has used it." "We cannot say that plaintiff had any title to the street, or that the occupation of the street by the defendant was unlawful." Judge LEARNED concurred in the result apparently with some hesitation. He said that in regard to the question of damages, he thought the matter did not depend altogether "on the permanency of the structure;" that if A. trespasses on the land of B. and erects a structure, however permanent, he supposed that in an action for trespass damages could be recovered only for injuries up to the time of the commencement of the action, and that if the trespasses were continued, another action could be brought. But he seemed to be of opinion that, as the railroad company could legally acquire property needed for its track and a right to construct its road upon a street, when they have taken possession and have in fact used a street in a manner indicating a permanent use, it is not unreasonable that in an action against them damages should be recovered for the whole injury.
I have thus carefully and fully stated these facts to show the precise theory upon which the damages were recovered at the trial term and the judgment was affirmed at the General Term; and that the theory is fundamentally and radically erroneous, I can have no doubt.
Railroads are authorized to be built by law; but before a proposed railroad can be lawfully built its builders must obtain the right of way; they cannot take private property for that purpose without first making compensation therefor, and if they do, they become trespassers. If the railroad be built upon or over a highway the public right or license must be obtained not only, but so far as individuals own private rights or interests in the highway or the soil thereof, they must also be lawfully acquired; and it is equally true whether the railroad *Page 107 
be built upon a highway or be built elsewhere without acquiring the private right or property, that the builders are liable for all the damages suffered by the owners of such rights and property. As to them and their rights the railroad is unlawful, a continuing nuisance which they can cause to be abated, and so it has been settled by repeated decisions. (Williams v.N.Y.C.R.R. Co., 16 N.Y. 97; Mahon v. N.Y.C.R.R. Co.,
24 id. 658; Plate v. N.Y.C.R.R. Co., 37 id. 472; Henderson v.N.Y.C.R.R. Co., 78 id. 423; Story v. Elevated R.R. Co.,
90 id. 122; Mahady v. B.R.R. Co., 91 id. 148.)
But wherever a railroad is lawfully built with proper care and skill, there it is not a nuisance. What the law sanctions and authorizes is not a nuisance although it may cause damages to individual rights and private property. If a railroad be built upon a highway, after acquiring the public right and the private property, if any, in the street or the soil thereof, then the owners thereof are not responsible for any damages necessarily resulting from the construction or operation of the railroad to private property adjacent or near to the road, and so too the law has been settled in this State by many decisions. (Radcliff'sExecutors v. Mayor, etc., 4 N.Y. 195; Davis v. Mayor,etc., 14 id. 506; Bellinger v. N.Y.C. Railroad Co.,
23 id. 42; Kellinger v. Forty-Second St., etc., Railroad Co.,
50 id. 206.) The case of Fletcher v. A. S. Railroad Co. (25 Wend. 462), so far as it holds a contrary doctrine, has been overruled by the cases just cited.
Here there was no complaint that the work done by the defendant in the street was not done with sufficient care and skill, and it was assumed at the trial that it was legally and lawfully done and that the defendant was not a trespasser in the street. That assumption implies that the defendant had the public license to do what it did not only, but also that it invaded no property rights of the plaintiff in the street. The assumption was warranted by the facts. This railroad company in a populous city had been there for a large number of years, and it cannot be assumed that it was there without right, and there is no allegation *Page 108 
in the complaint that it was. There was no proof that the railroad embankment was made any wider on the easterly side toward the plaintiff's lots, and hence it may be assumed that the additional track was laid upon its embankment and under rights early acquired and long possessed by it at that place. As before stated, there is no proof that either the railroad tracks or any part of the railroad embankment was placed upon the soil of the plaintiff in the street, and in fact neither was. Even if plaintiff's lots were bounded southerly by the center of Colonie street all the defendant did was to raise the street and sidewalk in front of her lots so as to conform the grade of the street to the grade of the railroad and of Broadway, over which it passed. This we must assume it had from the city the right to do, and so much it was bound by law to do under the General Railroad Act (Laws of 1850, chap. 140, § 28, subd. 5) by which it was bound to restore the street to "such state as not unnecessarily to have impaired its usefulness." Here there was no allegation nor proof that the street as a street for travel was in any way injured, and much less that its usefulness was unnecessarily impaired. It was not, in front of plaintiff's premises, by the act of the defendant, devoted to any thing but street purposes, and as the city could have raised the grade of the street without liability to abutting owners, so it could authorize the defendant to do so without such liability. We have a case then where the defendant did acts in the street entirely lawful and where it was held liable for the consequential damages to the plaintiff's adjacent property, caused by the careful use of its lawful authority and the proper exercise of its legal rights. To uphold this recovery upon such a theory would subvert a very important rule of law about which there has been no substantial question in this State for at least thirty years. The rule was recognized by all the judges who wrote opinions in Story v. Elevated Railroad Co.,
and by the judge who wrote in Mahady v. Railroad Co., the latest cases in which the rule has been under consideration here.
Even if the assumption that the acts done by the defendant in Colonie street were lawful was not warranted by the facts, *Page 109 
yet as the lawfulness of the acts was assumed by the court, and substantially conceded by plaintiff's counsel at the trial, the assumption should prevail here, because but for it the defendant might have proved that its acts were lawful.
But the learned counsel for the plaintiff, as we understand his brief, does not attempt to sustain this judgment upon the theory adopted by the trial judge. He claims that the interference by the defendant with the street was unlawful and a nuisance, and that, therefore, the plaintiff was entitled to recover damages caused thereby; and if he is right in his contention that this embankment placed in the street by the defendant was unlawful and therefore a nuisance, then the plaintiff was entitled to recover damages. The question, however, still remains, what damages? All her damages upon the assumption that the nuisance was to be permanent, or only such damages as she sustained up to the commencement of the action? We have here for consideration an important principle of law which has to be frequently applied and which ought to be well known and thoroughly settled. There never has been in this State before this case the least doubt expressed in any judicial decision, so far as I can discover, that the plaintiff in such a case is entitled to recover damages only up to the commencement of the action. That such is the rule is as well settled here as any rule of law can be by repeated and uniform decisions of all the courts; and it is the prevailing doctrine elsewhere. In Hambleton v. Veere (2 Saund. 169, 170), the learned annotator in his note says: "So in trespass and in tort, new actions may be brought as often as new injuries and wrongs are repeated; and, therefore, damages shall be assessed only up to the time of the wrong complained of." In Rosewell v.Prior (2 Salk. 459, 460), the plaintiff being seized of an ancient house and lights, defendant erected a building whereby plaintiff's lights were estopped. There was a former recovery for the erection and the second action was for the continuance of the erection; and it was held that the former recovery was not a bar. In Bowyer v. Cook (4 M., G. S. 236), there had been an action of trespass for placing stumps and stakes on plaintiff's land, and *Page 110 
the defendant paid into court in that action, forty shillings which the plaintiff took in satisfaction of that trespass. The plaintiff afterward gave the defendant notice that unless he removed the stumps and stakes a farther action would be brought against him; and in the second action it was held that the leaving the stumps and stakes on the land was a new trespass, and that the plaintiff was entitled to recover. In Holmes v.Wilson (10 A. E. 503), the action was trespass against a turnpike company for continuing buttresses on plaintiff's land to support its road. Plaintiff had recovered compensation for the erection of the buttresses in a former action and the money had been paid into court and received by him; and it was held that after notice to defendant to remove the buttresses, and a refusal to do so, plaintiff might bring another action of trespass against the company for keeping and continuing the buttresses on the land, and that the former recovery was not a bar to such an action. In that case it was argued for the defendant that the damages given in the first action were to be regarded as a full compensation for all injuries occasioned by the buttresses, and were to be considered as the full estimated value of the land permanently occupied by the buttresses; that the damages were in respect of prospective as well as past injury, and that the judgment operated as a purchase of the land. PATTERSON, J., said in reply to the argument: "How can you convert a recovery and payment of damages for the trespass into a purchase? A recovery of damages for a nuisance to land will not prevent another action for continuing it;" and it was argued by learned counsel for the plaintiff in reply to the argument that the former judgment operated as a purchase of the land: "As to the supposed effect of the judgment in changing the property of the land, the consequence of that doctrine would be, that a person who wants his neighbor's land might always buy it against his will, paying only such purchase-money as a jury might assess for damages up to the time of the action. If the property was changed when did it pass? Suppose the plaintiff had brought ejectment for the part occupied by defendant's buttresses, would the recovery of damages in trespass *Page 111 
be a defense? There is no case to show that when land is vested in a party and fresh injuries are done upon it, fresh actions will not lie." (See, also, Thompson v. Gibson, 8 M. W. 281;Mitchell v. Darley Main Colliery Co., L.R., 14 Q.B.D. 125;Whitehouse v. Fellowes, 10 C.B. [N.S.] 765.) I find no case in England now regarded as authority in conflict with these cases. The case of Beckett v. Midland R.R. Co. (L.R., 3 C.P. 82) does not lay down a different rule. That case arose under the Land Clauses Consolidation Act and the Railroad Clauses Consolidation Act, which require full compensation to be made by railroad companies not only for lands taken but also for damages to lands injuriously affected. Under those acts the plaintiff recovered, not only the value of his lands taken, but for permanent injury to his other lands. The case of Lamb v.Walker (L.R., 3 Q.B.D. 389) was overruled in Mitchell v.Darley Main Colliery Company (supra) and is no longer authority in England.
The same rule of damages which I am trying to enforce prevails generally and with very rare exceptions in the other States of this Union. In Esty v. Baker (48 Me. 495), APPLETON, J., said: "The mere continuance of a building upon another's land, even after the recovery of damages for its erection, is a trespass for which an action will lie. In Russell v. Brown
(63 Me. 203), the action was trespass quare clausum for continuing upon the plaintiff's land the wall of a building nine inches wide and one hundred and six feet long. The defendant pleaded in bar a former judgment recovered for building the wall, and satisfaction; and it was held that the mere continuance of a structure tortiously erected upon another's land, even after recovery and satisfaction of a judgment for its wrongful erection, is a trespass for which another action of trespassquare clausum will lie, and that a recovery with satisfaction for erecting a structure does not operate as a purchase of the right to continue such erection. In C. O. Canal Co. v.Hitchings (65 Me. 140), the action was trespass for filling about two hundred yards of canal, and the justice instructed the jury inter alia: "Whatever diminution there is in the value of the *Page 112 
property by reason of the trespass is an element of damage." The defendant excepted to this instruction, and it was held erroneous; that the recovery should have been limited to such damages as were sustained down to the commencement of the action. WILTON, J., writing the opinion, said: "It is now perfectly well settled that one who creates a nuisance upon another's land is under a legal obligation to remove it, and successive actions may be maintained until he is compelled to do so;" "the doctrine of all the cases is, that a recovery of damages for the erection of a building or other structure upon another's land does not operate as a purchase of the right to have it remain there; and that successive actions may be brought for its continuance until the wrong-doer is compelled to remove it;" "as a necessary result of this doctrine it has been held — and we think correctly — that in the first action brought for such a trespass, the plaintiff can recover such damages only as he had sustained at the time when the suit was commenced. Because for any damage afterward sustained a new action may be maintained; and the law will not allow two recoveries for the same injury." "The injury complained of was the filling up of the canal. The defendant, acting under authority from the city of Portland, had extended Commercial street, over and across the canal by means of a solid embankment. No opening was left for the passage of either boats or water. Assuming that this embankment was unlawfully placed there — that the canal should have been bridged, not filled up — and we have a nuisance upon the plaintiff's land; something placed there which can, and, in contemplation of law, ought to be removed. For such an injury successive actions may be maintained until a removal is compelled. The damages must, therefore, be limited to such as the plaintiff has sustained at the date of the writ. The rule given to the jury, namely, that the measure of damages was the diminution of the value of the property was inappropriate, and must have led to an erroneous result." In Bare v. Hoffman
(79 Penn. St. 71), the plaintiff had a dam from which he conducted water to his tannery and the defendant made a dam below into which the surplus *Page 113 
water over plaintiff's dam flowed, and from his dam the defendant, by a pipe, conducted the water to his tannery, by which the plaintiff lost the use of the water required to carry the offal from his tannery, and it was held that evidence of permanent injury to the market value of plaintiff's tannery was inadmissible; that the injury was not of such a character as to assume that it would be permanent and to assess damages accordingly; and that as a general rule successive actions may be brought so long as the obstruction is continued. MERCUR, J., writing the opinion, said: "The general rule is that successive actions may be brought as long as the obstruction is maintained. A recovery in the first action establishes the plaintiff's right. Subsequent actions are to recover damages for a continuance of the obstruction." In Thompson v. Morris Canal Banking Co. (17 N.J.L. 480), it was held that the title to lands does not pass by a verdict for the plaintiff, in an action of trespass; that it remains in the plaintiff, and, therefore, a verdict for damages to the full value of the land is manifestly wrong. InThayer v. Brooks (17 Ohio, 489), the action was case, for nuisance in diverting water from the mill of the plaintiff. The injury complained of in the declaration was that the mill was rendered less useful by reason of a diversion of a portion of the water from the stream by means of a canal cut by defendant. The court instructed the jury that the owner of the mill was entitled to recover such damages as the jury believed he had sustained by the mill-site having been diminished in value in consequence of the diversion of the water. BIRCHARD, Ch. J., writing the opinion, said: "This was going too far. Suppose the party liable at all he was only liable under any form of declaration for the damages actually sustained prior to the commencement of the suit."
In Anderson, etc., R.R. Co. v. Kernodle (54 Ind. 314), it was held that where a railroad company in the construction of its road-bed, without taking the steps prescribed by law to condemn its right of way, unlawfully enters upon and takes possession of land, and suit is brought by the owner thereof, to recover damages for such trespass, the damages assessed should include compensation *Page 114 
for the injury inflicted and such punitive damages as are authorized by law, but not the value of the land so used or appropriated; that in such an action no judgment that the court trying such cause is authorized to render will give the railroad company a title to the land appropriated. In Harrington v. St.P. Sioux City R.R. Co. (17 Minn. 215), where the defendant had built its road in the street adjoining plaintiff's land, it was held that it was a continuing nuisance for which successive actions could be brought, and an equitable action for an injunction was sustained for the reason that it would obviate the necessity of a multiplicity of suits. In Adams v. Hastings Dacota R.R. Co. (18 Minn. 260), the plaintiff was the owner and in possession of a lot situated on the side of the street which also extended to the center of the street, subject only to a public easement to use the same for street purposes. The defendant, a railroad company, without first acquiring the right so to do, constructed its road along the street in front of plaintiff's premises; and it was held that the defendant in thus appropriating the street to its own use was a trespasser, and that its acts constituted a private nuisance as against the plaintiff entitling him to maintain an action therefor, and that the damages would be for the unlawful withholding of the possession of the premises up to the commencement of the action. RIPLEY, Ch. J., writing the opinion, said: "As there is no presumption of law that such illegal running of trains and other trespasses will be continued in the future, that the unlawful act of to-day will be repeated on the morrow, it is, of course, obvious that while the jury in the present case could assess past damages, they could not assess the permanent damages to accrue from an assumed continued use thereafter of the land by the defendant in the same way." In Ford v. C. N.W.R.R. Co. (14 Wis. 609), the owner of lots abutting on a street in a city brought an action against a railroad company to recover damages caused by the construction of its road-bed through the street in front of his lots, and for an injunction restraining the defendant from laying down its rails in front of his property. DIXON, Ch. J., in writing the opinion, said: "It seems that the past damages, or those occasioned by the trespass, might have *Page 115 
been assessed by the court, or the judge might have ordered a jury for that purpose; but the permanent damages, or those which would accrue to the plaintiff by the continued use of the land by the company, can only be ascertained in the manner prescribed by the statute." In Carl v. S. F. du L.R.R. Co. (46 Wis. 625), the complaint alleged that plaintiff owned in 1869, and continued to own until 1873, a city lot with a dwelling-house thereon; that in 1869, defendant constructed its road with embankment and ditches along and on each side of the center of the street, in front of the lot, and maintained the same to the commencement of the action, and thereby obstructed access to the house and lot, and diminished their value; that by reason of the premises plaintiff, before the commencement of the action, was compelled to sell, and did sell, his property for a sum less by $1,000 than could otherwise have been procured for it, and that defendant had refused on demand to make compensation for the injuries so sustained, and had taken no steps under its charter to have the damages ascertained; and judgment was asked for the sum of $1,000; and it was held, that the action must be treated as one for damages for a continuing trespass, and that the complaint stated facts sufficient to sustain such an action; that the plaintiff in such an action, however, can recover nothing more than the damages to the property resulting from the trespass between the building of the road and the commencement of the action; that such a recovery would be no bar to a future recovery by plaintiff or his grantee for subsequent damages to the property by a continued maintenance of the road; and that evidence of the permanent depreciation in the value of the land resulting from such road was inadmissible. The judge writing the opinion said: "The recovery in the present action will be a bar only as to damages sustained previous to the commencement of the same, and the plaintiff or her grantees can recover in another action for any injury caused to the lot by the maintenance of such railroad subsequent to the commencement of this action." InBlesch v. C. N.W.R.R. Co. (43 Wis. 183), it was held that the rule of damages in such a case as this is the difference in value of the use of the lot, without *Page 116 
the railroad track and with the railroad track, between the date of building the same and the commencement of the action. Justice COLE, in delivering the opinion, said: "The damages recoverable in the action are, of course, for the past injury to the freehold and possession; that is, the pecuniary loss which the trespass had caused the plaintiff in the use and enjoyment of his property when the suit was commenced." And further; "One reason why a railroad company can be charged with the permanent damages for taking land for its use only in a proceeding under the statute for asserting the right of eminent domain is, that when such damages are paid the company is entitled to have a clear title to the property so taken, and such title cannot be acquired in an action for a trespass or nuisance. Another reason is that in the action to recover damages for the nuisance, the plaintiff may have judgment to abate the nuisance, and it would be clearly unjust that the plaintiff should recover damages for a continuance of the nuisance and at the same time have judgment to abate and remove the same." (See, also, S. O. Canal Co. v.Bourquin, 51 Ga. 379.)
In harmony with these authorities are the views of approved text-writers. (3 Blackst. Com. 220; Sedgwick on Dam. 155; Mayne on Dam. [1st Am. ed.], §§ 110, 111; 1 Sutherland on Dam. 199, 202; 3 id. 369, 399.) While the authorities in other States are not entirely harmonious, those which I have cited give the general drift of the decisions.
But whatever difference there may be in other States as to the rule of damages under consideration, in this State there is none whatever here. Here the authorities are entirely uniform that in such an action as this, damages can be recovered only up to the commencement of the action, and that the remedy of the plaintiff is by successive actions for his damages until the nuisance shall be abated. The law was so announced in Greene v. New YorkCentral Hudson River R.R. Co. (65 How. Pr. 154); Taylor v.Metropolitan Elevated Ry. Co. (50 N.Y. Super. Ct. 311);Duryea v. Mayor, etc. (26 Hun, 120), all cases entirely analogous to this. In McKeon v. See (4 Robertson, 449) it was held that the only damages which the *Page 117 
plaintiff is entitled to recover in an action against an adjoining owner for a nuisance upon the premises of the latter are those for a depreciation of the rent and loss of tenants caused by such nuisance previous to the commencement of the action. In Whitmore v. Bischoff (5 Hun, 176), it was held that the damages which a party can recover for a private nuisance are those which he has sustained previous to the bringing of the action, and that it is error to allow a recovery for the diminution in value of the premises based upon the assumption that the nuisance is to continue forever. In Duryea v. Mayor,etc. (26 Hun, 120), the action was brought to recover the damages occasioned by the wrongful act of one who had discharged water and sewage upon the land of another, and it was held that no recovery could be had for damages occasioned by discharge of water and sewage upon the land after the commencement of the action. In Blunt v. McCormick (3 Denio, 283), the action was case for damages in consequence of the erection of a building adjoining plaintiff's, whereby plaintiff's light was obstructed. The plaintiff was defendant's tenant. The court at the trial charged the jury that if the plaintiff was entitled to recover they should give damages for the injury which he would suffer during the whole of his term. It was held that his charge was erroneous, and that a recovery could be had only for such damages as had occurred at the time the suit was commenced and not for the whole term. In Plate v. New York Cent. R.R. Co. (37 N.Y. 472,473), the action was brought to recover damages caused by keeping and maintaining the defendant's railroad track and ditches along the side thereof in such manner as to cause the water to flow back upon the plaintiff's land. There had been a former recovery of damages for the same cause which was alleged as a bar to the second action; but it was held not to be a bar. The judge writing the opinion said: "If indeed he could have recovered damages not only for all injuries which had occurred previous to the commencement of the action, but also for all injuries which may possibly thereafter occur, the first recovery would be a bar to the second." In Williams v. Railroad Co.,
and *Page 118 Story v. Railroad Co., a resort to equity was allowed, because the necessity of bringing successive actions to recover damages would thus be obviated. If in those cases the plaintiffs could have recovered all their damages, past and prospective, in actions at law, equitable actions would have been unnecessary and unauthorized. The case of Mahon v. New York Cent. R.R. Co. (24 N.Y. 658) is a precise authority, and if there were no other ought to control the decision of this case. In that case the railroad company constructed its road and laid its tracks upon a highway in front of Mahon's premises. His title to the adjoining premises extended to the center of the street, and in 1842 he commenced an action against the railroad company to recover damages in consequence of the construction and operation of the railroad in the highway in front of his premises; and he recovered a judgment. Afterward he died and then his executors instituted an action to recover damages sustained during his life-time subsequently to the former recovery for a continuance of the railroad and its continued operation in the street; and to the last action the defendant interposed as a defense the former recovery, and it was held not to be a bar. As disclosed by the printed papers to be found in the State library, the declaration in the first action contains four counts. In the first and fourth, among other things, it was alleged that the plaintiff lawfully owned and possessed a lot and dwelling house thereon, and that the defendant caused to be wrongfully constructed an embankment of earth of the height of five feet in front of his premises and wrongfully continued and maintained the same and operated its railroad thereon, by means whereof he could not have and enjoy his free and unobstructed passage into and upon his lands and to and from his dwelling-house, and his lot and dwelling-house were flooded with water and rendered damp, and his buildings and property were greatly injured and depreciated in value. It is thus seen that the character of the injuries complained of in that action were like those complained of here, and that a depreciation in the value of the property was claimed. If the complaint here is broad enough to recover for *Page 119 
permanent diminution of the value of the property upon the theory that the nuisance was to be permanent, so the declaration there was broad enough to recover damages upon the same theory; and if the facts of this case are sufficient to justify and uphold a recovery for permanent injury and diminution in value of the property, so clearly were the facts of that case. In the argument before this court of the second case, which is above cited, it was claimed that the declaration in the first suit was broad enough to embrace the damages which Mahon's property sustained by the construction of the railroad through all time, and that whether it was or not the result should be the same, as the damages resulting from the construction of the railroad were incapable of being split up and made the subject of an infinite number of actions; and that the true rule in such a case was that the plaintiff was at liberty to prove and the jury were bound to consider what damages might probably be the result of the act complained of, and the finding in one case must embrace all the damages. On the other hand it was claimed that the plaintiff in that suit could have recovered damages legally only up to the commencement of the suit. The court at the trial of the second action held that the former recovery was a bar, and upon that ground nonsuited the plaintiffs. They then appealed to the General Term where the prevailing opinion for affirmance was written by Judge ALLEN. He held that the former recovery was a bar; but stated in his opinion that "if the wrong complained of had been a technical nuisance, in the legal sense of the term, a recovery for damages for the erection would not bar an action for the continuance;" that "every day's continuance would be a legal wrong for which an action would lie;" that "a right cannot exist to continue a nuisance, and every party affected by it may insist upon its removal, and the neglect to comply with the duty resting upon a party to abate a nuisance which he has either erected or maintains gives an action to any party injured by the neglect." But he held that the railroad was not to be treated as a nuisance, and that the company had permanently appropriated the highway to its use, and therefore permanent damages could be recovered; *Page 120 
and his opinion, if sound, would uphold this recovery. Judge PRATT wrote a dissenting opinion, taking an opposite view. In his opinion he said: "If the injury complained of was of that nature that he was entitled to recover prospective damages, he should have proved them in that suit. The law will not suffer a party to unnecessarily split up demands and thus needlessly multiply suits;" and further: "The track and embankment would under such circumstances be a continuing nuisance, and the defendants would be liable to a new action every day so long as they kept it up, and damages would accrue to the owner. A person by erecting a nuisance on the lands of another or by trespassing on such lands acquires no right thereby, and a recovery of damages for the injuries sustained does not have the effect to vest the title in the wrong-doer as in the case of a conversion of personal property;" and here the judgment was unanimously reversed. CLERKE, J., writing the opinion, commenced by saying: "If the plaintiff's testator could have recovered all that he was entitled to in the first action, it is of course a bar to the second; and this depends chiefly, though not altogether, upon the question whether the Utica and Schenectady Railroad Company in any way transcended the authority constitutionally vested in them by the legislature. If they did their road is a nuisance — a perpetual nuisance, and every day's continuance of it is a legal wrong, for which they are liable in damages after they have accrued." And he held that the railroad company did transcend its authority by entering upon the highway without first causing Mahon's damages to be assessed and paid, and that the illegal appropriation of the highway made it liable to damages in successive actions as the damages accrued; and he further said: "The railroad company, therefore, having without compensation to those entitled to the reversion of the lands, constructed, maintained and operated their road upon the highway in question, acted and continued to act unlawfully, and are liable to damages from time to time as they accrued, and on this ground the second action is maintainable." In the course of the opinion this language is used: "If they did not *Page 121 
transcend their authority, and yet, in constructing their road, have necessarily injured the rights of others, they are equally liable to respond for prospective as well as accrued damages; and in such case they cannot be vexed again in a second action." It is not apparent precisely what was meant by this phrase. It is a mere dictum, and certainly announces an erroneous rule of law. It may be that the learned judge was misled by the doctrine apparently laid down in Fletcher v. Auburn Syracuse R.R.Co. (supra). The same judge in Plate v. N.Y. Cent. R.R.Co. (supra), speaking of that paragraph, says: "I am inclined to think there is some clerical or typographical mistake here, or perhaps there was some inadvertence on my part in the haste of writing," and that it can "at most be considered nothing more than a dictum, and, therefore, cannot control the present case."
There is no authority to be found in this State holding any other rule of damages in such a case. The case of Henderson v.New York Cent. R.R. Co. (78 N.Y. 423) is not in conflict as that was an equitable action; and in the opinion written in that case the rule is recognized to be otherwise in actions at law; and the case of Mahon v. N.Y. Cent. R.R. Co. is expressly recognized, and it was certainly not intended to overrule or depart from it or any of the prior authorities. The judgment there was based entirely upon equitable principles, and there it was ordered that upon payment of the sum awarded by the referee, the plaintiff should convey the title to the defendant. If the case of Mahon v. R.R. Co., supported as it is by abundant authority and based upon common-law principles, which in this State have always been recognized, is to be disregarded in the decision of this case, it had better be distinctly overruled and no longer left to lure the legal wayfarer by its false light. (See, also, Schell v. Plumb, 55 N.Y. 592, 598.)
The rule contended for by the plaintiff and affirmed by the Supreme Court in this case would lead to some embarrassments and to great inconvenience. The plaintiff's recovery cannot divest her of any legal rights she has in the street, either to an *Page 122 
easement or to the soil; and if we may assume that her recovery would bar any future recovery for the precise embankment and the precise use thereof, which existed at the time of the commencement of her action, yet it would not bar a recovery if there should be a change in the embankment or the use thereof. If the defendant should run a few more trains of cars, or raise its embankment, or widen it, or change it in any way, the plaintiff would be permitted to institute a new action and to repeat her action every time there should be any change. And yet she has recovered damages in this action upon substantially the same theory damages would have been awarded if there had been an appraisement under the statute which vests title in the defendant. If the rule affirmed be the correct one, then a railroad company authorized to construct its road may enter upon the lands of any private person and take them, and in a suit for trespass the plaintiff must recover his entire damages and the railroad company must become substantially vested with the title to the land; and thus instead of conforming to the statute it may acquire land by a pure trespass. And so the owner of land instead of resorting to the constitutional tribunal for the appraisement of his damages may have them appraised by an action which really vests no perfect title. Can the statute of frauds be subverted and a perpetual easement or right in land without a grant be thus conveyed by mere estoppel? In this case has happened what may happen in many cases: The defendant supposed, and had the right in good faith to suppose, that it had satisfied plaintiff's damages and acquired all her property interest in the street until the verdict of the jury undeceived it; and then if the verdict shall stand, it became obliged to pay her for perpetual damages, although they had come to an end, and to make the same compensation which it would have been required to make if it had acquired a perfect title under the statute; and yet it is left without a perfect title liable to successive suits on the claim to be established on the uncertain evidence of witnesses that its burdens upon or interference with the street had been changed or increased. It was not left the option either to abate the alleged nuisance or to *Page 123 
perfect its title, in the mode prescribed by law, to any easement or interest the plaintiff might have in the street.
The law will not proceed upon the assumption that a nuisance or illegal conduct will continue forever. The impolicy and absurdity of such an assumption is illustrated in this case as the defendant offered to prove, and hence it may be taken as true, that since the commencement of the action it has reduced the street to its former grade.
The rule laid down in the cases which I have cited, and which I contend is the true one, gives any party who has suffered any legal damages by the construction or operation of a railroad, ample remedy. He may sue and recover his damages as often as he chooses, once a year or once in six years, and have successive recoveries for damages. He may enjoin the operation of the railroad and compel the abatement of the nuisance by an action in equity; and where his premises have been exclusively appropriated, or where a highway, in the soil of which he has title, has been exclusively appropriated by a railroad, he may undoubtedly maintain an action of ejectment. (Brown v.Galley, Hill Denio's Supp. 380; Etz v. Daily, 20 Barb. 32; Redfield v. Utica, etc., R.R. Co., 25 id. 54.) It certainly cannot be necessary to subvert the law as it has been well established in order to give the plaintiff ample remedy for any wrong which the defendant has done or can do her in the street in front of her premises. Nor can it be expedient to introduce into the nomenclature of the law a new action, one to recover for the conversion of real property to be followed by the same consequences as an action for the conversion of personal property.
As to this rule of damages, it matters not what the form of the complaint in the first action was. The plaintiff is bound to recover in his first action all the damages to which he is entitled. If he is entitled to damages for permanent injury to his property, it is not optional for him to split them up and recover part of them in the first action and then bring subsequent actions for the rest. If entitled to recover damages only up to the commencement of his action, no form of complaint *Page 124 
will entitle him to recover more. In the case of Mahon v.Railroad Company, it was proved that the former recovery was for damages only to the commencement of the former action, and yet that circumstance was not deemed material.
Since writing the above, the case of City of North Vernon v.Voegler (2 N. East. Rep. 821), containing a very elaborate opinion, has come to our attention. I have carefully examined that case and find that it is not authority for the plaintiff on the question now under discussion. There the city had the right to grade one of its streets, but did it so negligently as to cause damage to the adjoining lots of the plaintiff, and it was held that he could recover, and was bound to recover all his damages in a single action. It was decided that in the absence of negligence there would have been no liability for consequential damages caused by what was rightfully done in the street. The judge writing the opinion said: "Our decisions have long and steadily maintained that municipal corporations are not responsible for consequential injuries resulting from the grading of streets when the work is done in a careful and skillful manner; but they have quite as steadily maintained that where the work is done in a negligent and unskillful manner the corporation is liable for injuries resulting to adjacent property." Here there was no allegation or proof or claim of negligence or unskillfulness in the construction of the embankment in the street, and, as I have shown, it was assumed and conceded upon the trial that it was lawfully and legally constructed. The trial judge did not submit to the jury any question of negligence, but charged them if they found against the defendant as to the release then it was absolutely liable for plaintiff's damages, and that the only question for their consideration was the amount of the damages. Hence that case is an authority for the views I have expressed upon the first ground of error herein discussed. But the case is also inferentially authority for the second ground of error upon which I have based my conclusion. The judge writing the opinion there is very careful to place his decision upon the ground that *Page 125 
the structure in the street was rightful, but negligently made, and he recognized the rule, as to successive actions, to be different where the structure is wrongfully in the street and is there a nuisance. He said: "This is not the case of a nuisance. It is the case of a negligent improvement in a street. The improvement was in itself rightful and legal, but the manner in which the improvement was made was wrongful. The wrong was not in grading the street but in the manner of doing it. It is not a nuisance for a municipal corporation to grade its streets; but it is an actionable wrong to do it negligently. The wrong in negligently grading the street is the basis of the action, for there are no facts alleged constituting a nuisance. It is not a nuisance to do what the law authorizes, but it may be a tort to do the authorized act in a negligent manner. It is evident, therefore, that the cases which hold that the continuance of a nuisance will supply ground for an action have no influence upon this case," and hence those cases were not cited. It is clearly to be inferred that if that court had been dealing with the case of an unlawful embankment placed in the street, it would have held that successive actions could be maintained. But I am of opinion that that decision is clearly unsound as to the precise question adjudged. What right was there to assume that the street would be left permanently in a negligent condition and then hold that the plaintiff could recover damages upon the theory that the carelessness would forever continue? A municipality or a railroad corporation under proper authority may erect an embankment in a street, and if the work be carefully and skillfully done it cannot be made liable for the consequential damages to adjacent property. But if it be carelessly and unskillfully done, it can be made liable. It may cease to be careless, or remedy the effects of its carelessness, and it may apply the requisite skill to the embankment, and this it may do after its carelessness and unskillfulness and the consequent damages have been established by a recovery in an action. The moment an action has been commenced, shall the defendant in such a case be precluded from remedying its wrong? Shall it be so precluded after a recovery against it? *Page 126 
Does it establish the right to continue to be a wrong-doer forever by the payment of the recovery against it? Shall it have no benefit by discontinuing the wrong, and shall it not be left the option to discontinue it? And shall the plaintiff be obliged to anticipate his damages with prophetic ken and foresee them long before, it may be many years before they actually occur, and recover them all in his first action? I think it is quite absurd and illogical to assume that a wrong of any kind will forever be continued and that the wrong-doer will not discontinue or remedy it, and that the convenient and just rule, sanctioned by all the authorities in this State, and by the great weight of authority elsewhere, is to permit recoveries in such cases by successive actions until the wrong or nuisance shall be terminated or abated. But whether that case was properly decided or not, it is not in conflict with the conclusions I have reached in this case, but is in entire harmony with them.
Therefore, upon both grounds considered in this case there should be a reversal of this judgment and a new trial.
All concur, except DANFORTH, J., dissenting, and MILLER, J., not voting.
Judgment reversed.