THE RECTOR, CHURCHWARDENS AND VESTRYMEN OF TRINITY CHURCH IN THE CITY OF NEW YORK, Plaintiff, *v.* THE CITY OF NEW YORK and FREDERICK L. CRANFORD, INC., Defendants.

Supreme Court, New York County, March 18, 1929.

*Sprague, Seymour & Sprague* [*Origen S. Seymour, Chase Mellen* and *William B. Sprague* of counsel], for the plaintiff.

*George P. Nicholson*, Corporation Counsel [*Charles Blandy, Charles V. Nellany* and *F. R. Rubel* of counsel], for the defendant The City of New York.

*Kellogg & Rose* [*Franklin Nevius* and *Asa B. Kellogg* of counsel], for the defendant Frederick L. Cranford, Inc.

FRANKENTHALER, J.   Plaintiff, The Rector, Churchwardens and Vestrymen of Trinity Church in the City of New York, commenced this action on April 12, 1926, to recover $131,340 from the city and from Frederick L. Cranford, Inc., the contractor which constructed the subway in Trinity place during the years 1913, 1914 and 1915.   The sum demanded represents the expenditure incurred by plaintiff in underpinning the western part of Trinity Church in 1925.   It is plaintiff's claim that the underpinning was necessary to counteract the settlement of this portion of the church structure and that the settlement was caused by the excavation work performed in Trinity place by the defendants.   The latter, in addition to a general denial, set up the defense of the Statute of Limitations. They assert that the action can be maintained, if at all, only on the theory that they impaired plaintiff's easement of lateral support and thereby *injured* its property.   They maintain that the provisions of subdivision 3 of section 48 of the Civil Practice Act are applicable, which provide that an action to recover damages for an *injury* to property must be begun within six years from the time the cause of action accrued.   Plaintiff, on the other hand, disavows any intention of invoking the remedy suggested by defendants.   It contends that it has been deprived of the easement of lateral support which formerly belonged to it and that it is suing for the *taking* of the property right embodied in that easement. Accordingly, it urges that the situation is governed by the twenty-year Statute of Limitations.   (Citing *Matter of Clark* v. *Water Com-*

*missioners*, 148 N. Y. 1.) I must confess that I find it difficult to agree with the proposition that the acts charged to the defendants could constitute a " *taking of* " rather than an " *injury to* " the easement of lateral support. Should new excavating be done in Trinity place with concomitant damage to the lateral support now enjoyed by plaintiff, the latter would undoubtedly claim that its rights had been interfered with. Yet this would be inconsistent with the theory that the defendants here have confiscated plaintiff's easement and must respond to plaintiff in damages for the property taken. Moreover, as pointed out in *Uline* v. *N. Y. C. & H. R. R. R. Co.* (101 N. Y. 98, 123), it cannot be expedient " to introduce into the nomenclature of the law a new action, one to recover for the conversion of real property to be followed by the same consequences as an action for the conversion of personal property." Plaintiff's action here on the theory suggested is really one for the conversion of realty and would, if successful, result in the passage of title by mere estoppel without a grant. In *Matter of Rapid Transit Railroad Commissioners* (197 N. Y. 81), upon which plaintiff places so much reliance, the statute authorized condemnation and acquisition by the city of *claims for damages* as well as of property (p. 93). There is nothing in the opinion to justify any contention that the interference with an easement of lateral support represents a *taking* of property. The court did not proceed on the theory that title to the easement passed to the city and that the damages awarded represented the value of the easement. It held merely that the owner of the easement of lateral support was entitled to compensation for all damages inflicted upon his property as a result of interference with his easement (pp. 100, 103, 104, 105). There was merely an acquisition of a damage claim. Furthermore, even if it be assumed that there was a passage of title to the easement, the proceeding was one in which title to real property could be properly conveyed pursuant to statutes authorizing the same. Apart from the question of the propriety of the theory of action invoked by plaintiff, there is some doubt as to whether even an action for *injury* to property would be barred under the six-year statute, in view of plaintiff's claim that the settlement of the church edifice, which brought about the expenditures for underpinning the structure, occurred within six years prior to the commencement of this action. (See *Ludlow* v. *Hudson River R. R. Co.*, 6 Lans. 128; 4 Hun, 239; 37 C. J. 890, 891.) The weight of authority appears to favor the view that the wrong consists of the disturbance of the surface rather than the removal of the lateral support and that, therefore, the Statute of Limitations does not commence to run until the damage has become visible through the development of

injuries to the surface of plaintiff's land. (*Backhouse* v. *Bonomi*, 9 H. L. Cas. 503; *Darley Main Colliery Company* v. *Mitchell*, L. R. 11 App. Cas. 127; *Crumbie* v. *Wallsend Local Board*, L. R. [1891] 1 Q. B. 503; *Smith* v. *Seattle*, 18 Wash. 484; *Pollock* v. *Pittsburgh, etc., R. R. Co.*, 275 Penn. St. 467; *Ludlow* v. *Hudson River R. R. Co., supra.*) In the *Ludlow Case* (*supra*) the court pointed this out at page 133: " The damages did not exist, and had not been incurred when the work was done, or within six years thereafter. If an action had been brought before they had actually been sustained, the amount of recovery would have depended upon mere probabilities and the wildest conjecture. The consequential injury had not happened until the land of the plaintiff slided away, and hence no action could be maintained for the damages arising in consequence thereof. * * * Here the act which caused the injury, ultimately, was, when it was done, no trespass or any innovation upon the plaintiff's rights, and there was no cause of action until the injury happened." As I view the evidence, however, a determination of these interesting questions is unnecessary to a decision of the instant case and would, therefore, be superfluous. The trial was had before me without a jury. It took many weeks and a great deal of testimony was offered on both sides. The voluminous nature of the record, which I have studied with great care, makes it difficult to review the proof without extending this opinion to undue and perhaps tedious length. Suffice it to say that I am of the opinion that plaintiff has failed to sustain the burden of establishing a causal connection between the subway excavations of 1913 to 1915 and the settlement of the church which resulted in the underpinning operations of 1925. Undoubtedly the plaintiff had and still has an easement of lateral support in the land underlying Trinity place, and there can be little question that it is entitled to compensation for all damages inflicted upon its premises by reason of interference with that easement by the defendants, irrespective of any issue of negligence. (*Matter of Rapid Transit Railroad Commissioners, supra.*) I am inclined to believe that plaintiff has established by a fair preponderance of evidence that there was some settlement of the church structure during the time that the subway work was in progress and that the excavations for the subway were at least a concurrent or a contributing cause of this settlement. No claim is, however, asserted by plaintiff for the cost of repairing the damage done by this settlement. Indeed, defendant Frederick L. Cranford, Inc., appears to have pointed up all the cracks in the church which made their appearance during the subway operations, to the extent that they were regarded as being of any importance. It seems to me, moreover, that the evidence indicates that for

a period of about seven years following immediately upon the cessation of the subway work there was no appreciable settlement in the church structure, the churchyard, or the retaining wall running along Trinity place. This may well be termed a period of practical quiescence. Some settlement there was, but it appears to have been no more serious than that which had been going on even prior to the commencement of the defendants' operations. Apparently the bed of Trinity place had been in motion for some time prior to 1912, perhaps as a result of the weight of the tall structures built in the vicinity and/or the character of the soil, and the fact that it was formerly the bank of the river. Cracks indicating settlement had appeared in the church and surveys taken at different times had disclosed variations in the elevations of selected points in the structure. There are also other circumstances in the record which persuade me that the church had been undergoing successive settlements prior to 1912 and that the causes thereof continued to exist and to operate during the period of subway construction and also from the date of its completion to the present time. The minor disturbances which occurred between 1915 and 1922 seem to have been the result of the very factors which were responsible for the continuous settlement of the structure prior to 1912. At least the testimony fails to satisfy me that such was not the case and that they were due to the construction of the subway under Trinity place. To succeed here it is for the *plaintiff* to establish that the settlement of the church after the year 1922, which was finally repaired in 1925, was caused by the operations of the defendants prior to 1916. The settlement of the church prior to 1913, the care with which the retaining wall adjacent to Trinity place was underpinned by the contractor in 1913, the prudent measures adopted in the excavation for the subway to prevent any serious movement of the soil, the fact that minor disturbances of the soil and structure caused by the work occurred while the work was still in progress and shortly after its completion, the fact that for many years thereafter the edifice and the surrounding grounds were in a quiescent condition; these, as well as other circumstances disclosed by the testimony, all leave me with a distinct impression that the settlement which it was sought to counteract in 1925 may well have been due to causes other than the construction of the subway many years before. The most that can be said in plaintiff's favor is that the subway work in 1913 and 1914 was a possible factor in causing the church to settle which was first observed in 1922. The evidence, taken as a whole, fails to establish that it was a proximate cause of the injury complained of.

The burden of proof is upon plaintiff and it is not satisfied by evidence which leaves it a matter for conjecture whether the defendants' operations brought about or contributed directly to the bringing about of the damage for which recovery is sought. The case is quite different from one where the injury complained of is proximate both in time and in distance to excavations on abutting premises. It follows that in accordance with the stipulation entered into at the outset of the trial defendants' motion for the direction of a verdict must be granted with an exception to plaintiff. The motions to strike out referred to in the stipulation of the parties dated March 8, 1929, are denied with appropriate exceptions. Defendants' motions to dismiss are denied with exceptions to defendants, and plaintiff's motion for a direction in its favor is also denied with an exception to plaintiff. The record would not be complete without a word of praise for the admirable manner in which this complex and involved case has been tried by the able counsel representing the plaintiff and the defendants. Especially difficult were the obstacles confronting counsel for the plaintiff who had the task of convincing the court that the repairs made in 1925 were necessitated by subway work which was completed in 1915, and their mastery of the technical subject with which they had to deal merits more than passing commendation.